In Re Incorporation of BIRMINGHAM DRAINAGE DISTRICT v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

**Division One, August 9, 1915.***

1. **TITLE TO ACT: Broad Enough to Include Amendment.** The title to the Act of 1879, being "An Act to provide for the formation of drainage districts, to reclaim and drain swamp and overflowed lands in this State," was broad enough to include provision for any work, whether drain or levee, effectual for the purposes of reclamation; and in consequence, any subsequent amendment by mere reference to that act by section, article and chapter, as it later appeared in the Revised Statutes, fell within the title, so long as it related to the general purposes of reclamation; and all subsequent amendments have related thereto, and have been germane to the subject-matter of that act.

2. **DRAINAGE DISTRICTS: So Named in Act: Include Levees.** The fact that the Act of 1879 and subsequent amendments thereto have designated districts organized thereunder as "drainage districts" does not limit the activities of such districts to digging ditches, nor shear them of the power expressly given to construct levees.

3. ————: **Power to Construct Levees.** The Act of 1879 contemplated the construction of levees by drainage districts, and the Act of March 24, 1913, Laws 1913, p. 232, which by the processes of amendment has grown out of the Act of 1879, expressly provides for the construction of levees by such districts.

4. ————: ————: **Exclusive Methods.** The Act of April 7, 1913 (Laws 1913, p. 290) does not provide an exclusive method for the organization of districts when the construction of levees is contemplated.

5. ————: **Levees and Drains: Two Similiar Statutes.** The fact that the Legislature by progressive amendments has brought the Act of 1879 (now Act of March 24, 1913, Laws 1913, p. 232) and the Act of 1887 (now Act of April 7, 1913, Laws 1913, p. 290) into almost exact harmony as to the character of lands which may be included in a district, the persons who may move for its incorporation and the methods to be employed in working out its destiny, does not destroy any part of the Act of March 24, 1913, or limit the powers by it explicitly conferred upon a

* *Note*—Certified to the Reporter January 20, 1916.

district organized under it. A district may be organized under that act for the purpose of reclaiming overflow land .by the construction of a levee.

6. ———: **Delegation of Legislative Power to Engineer.** That part of section 10 of the Act of March 24, 1913 (Laws 1913, p. 232), which provides that the plan of reclamation, as reported by the engineer, or modifications thereof as approved by him after consultation, shall be adopted by the board of supervisors, is not unconstitutional as a delegation of legislative power to the engineer. In the nature of things there must be a plan, and some one must be empowered to adopt a plan, and manifestly the Legislature cannot provide detailed plans of reclamation in such general acts.

7. ———: ———: **When Raised.** Besides, the objection that said part of the act is unconstitutional on the ground that it is a delegation of legislative power to the engineer, not being one that goes to the whole act, does not fall within the scope of the objections which the statute prescribes may be. made to the incorporation of the district.

8. ———: ———: ———: **At the Hearing.** Moreover, that objection should be made at the hearing.

9. ———: **Non-Resident Supervisors.** And an objection that the provision of section 5 of the act, authorizing the selection of supervisors who do not reside in the district or county in which the district is situate, violates the principle that "jurors must be of the vicinage," is not an objection that the statute prescribes may be made to the incorporation of the district, and is one that should be made at the hearing if it is to be urged on appeal. Besides, supervisors are not jurors, and the objection is un- .tenable.

10. ———: **Voting By Acres: No Representation by Owners of Personalty.** That part of section 5 of the act which provides that in electing the first supervisors each "acre of land in the district shall represent one share, and each owner shall be entitled to one vote in person or °by proxy for every acre of land owned by him in such district" is not unconstitutional, on the theory that it disfranchises those who own less than one acre and those owning personalty only. The exclusion from voting of those who own personalty only is not objectionable, since personalty is not in any wise affected by the act; and since it states each acre shall represent one share, it follows that each fraction of an acre represents a corresponding frac- tional portion of a share, and its owner is authorized to vote accordingly.

11. ———: **Excessive Indebtedness: Special Taxes.** An objection that the large sums necessary to construct the contemplated

improvement will create an indebtedness in the form of taxes in excess of and contrary to the constitutional limitation upon taxation, will not avail to defeat the incorporation of a drainage district. The costs of the improvement are benefits assessed against the property, and such assessments are not public taxes.

12. ———: Sections Applicable to Former Organization. Section 60 of the Act of March 24, 1913, Laws 1913, p. 232, applies to districts organized prior to April 8, 1905, and objections thereto are not available to proceedings begun under said act.

13. ———: Inclusion of Railroad. The Act of March 24, 1913, Laws 1913, p. 232, authorizes the inclusion of a railroad as a part of the drainage district. It is not excluded by section 39, which provides that the word "owner" as used in the act shall not include reversioners, remaindermen, trustees or mortgagees, "who shall not be counted and need not be notified by publication, or served by process, but shall be represented by the present owners of the freehold estate in any proceedings under this act," for that section does not exclude any one, whether the owner of a freehold or an easement in land.

14. ———: ———: Entire Line of Road. The fact that the railroad company's line will be left exposed to overflow for many miles along the river front at points not included in the district, does not authorize the exclusion of its entire line.

15. ———: Inclusion of Lands not Benefited. The extent to which a tract of land will be benefited does not go to the question of the propriety of including it in the drainage district, but rather to the amount of benefits to be assessed against it. Evidence showing that about one-fourth of the land included is in need of drainage at all times, that about one-tenth of it overflows only in times of very high water, that the remainder has overflowed frequently in the last score of years, and that a portion of appellant's railroad track has overflowed at times in recent years, will authorize a decree incorporating a drainage district, and the inclusion of appellant's track.

16. ———: Unjustified Reclamation: When Objection Must Be Made. The objection that the work of reclamation will be so costly that it will not be justified by the benefits which may accrue, should be made when the plan of reclamation has been adopted and the cost and benefits estimated. If it proves true that the costs will not be justified by the benefits, the court must dissolve the incorporation.

17. ———: Other Property: Means Real Estate. The words "other property" used frequently in the act of March 24, 1913, authorizing the organization of drainage districts, do not mean personal property, but land and all interests in real estate.

18. ————: **Ownership of Land: Testimony.** An objection to the testimony of a witness, made after he had, in answer to a question, testified that he knew of his own knowledge that the several signers of the articles of association for the drainage district owned in the district the respective number of acres set opposite their names, came too late.

19. ————: ————: **Testified By Tenant.** It is competent for a tenant to testify as to the persons under whom he holds possession of tracts of land included in the drainage district.

Appeal from Clay Circuit Court.—*Hon. Frank P. Divelbiss*, Judge.

AFFIRMED.

*M. G. Roberts, Simrall & Simrall, Fred S. Hudson, D. C. Allen, James L. Minnis, N. S. Brown* and *Craven & Moore* for appellants.

*M. E. Lawson* and *Beardsley, Schaith & Beardsley* for respondent.

BLAIR, J.—This is an appeal from a decree of the Clay County Circuit Court incorporating the Birmingham Drainage District in Clay County. The proceedings for the incorporation of the district were begun under the Act of March 24, 1913 (Laws 1913, p. 232 et seq.). The articles of association filed conformed to the requirements of that act. The property of the defendant railway, in so far as it was designed to include it in the district, is particularly described. The boundaries of the district as set out in the articles of association include 5,390 acres, and the signers of the articles of association represent themselves as owning, in the aggregate, several hundred acres in excess of one-half of the total. Appellant appeared and filed objections to the incorporation of the district as follows: (1) Denying every allegation "in the petition contained." (2) That the incorporation was not sought in good faith, in that the real object thereof

was to build an expensive levee along the river front of the proposed district, and that any drainage done would be only incidental to the construction and maintenance of the levee; that the incorporation, if granted, should be under the Act of 1913 (Laws 1913, p. 290 et seq.) pertaining to the organization of levee districts by circuit courts; and that the effort to incorporate under the Act of March 24, 1913 (Laws 1913, p. 232 et seq.), was a subterfuge devised in order to obtain powers the district could not exercise if incorporated in good faith under the act pertaining specifically to levees. (3) That appellant's property could not be benefited or protected by any plan of improvement the proposed district might adopt. (4) That the property, including that of appellant, proposed to be included in the district, did not constitute one contiguous body of wet, swamp, or overflowed lands or lands subject to overflow, within the meaning of the act under which petitioners were proceeding. (5) That the Act of March 24, 1913 (Laws 1913, p. 232 et seq.), had been repealed by the Act of April 7, 1913 (Laws 1913, p. 290 et seq.), "and the publication made herein is not sufficient notice of said incorporation under said act" of April 7, 1913. The trial court heard a great deal of evidence upon the location, character, ownership, and likelihood of the land within the proposed district to overflow, and, at the conclusion thereof, overruled all objections and entered its decree incorporating the district as prayed. The district lies along the Missouri river and has a frontage thereon of nearly or quite eleven miles. The relevant evidence will, when necessary, be sufficiently stated in connection with the discussion of the questions presented for review.

I. In 1879 (Laws 1879, p. 132 et seq.) the Legislature enacted the original act providing for the organization by the circuit court of drainage districts "to reclaim and drain swamp and overflowed lands,"

and this act was incorporated in the chapter on "Lands" in the Revised Statutes of 1879,

**Levees and Drains: Different Statutes.** appearing as section 6207 et seq. By the processes of amendment the Act of March 24, 1913 (Laws 1913, p. 232 et seq.), has grown therefrom. In the Act of 1879 it was clearly provided that ditches, drains, levees, dikes and other works adapted to the reclamation of swamp and overflowed lands might be constructed by any district organized under that act. The title of that act was, "An Act to provide for the formation of drainage districts, to reclaim and drain swamp and overflowed lands in this State." That title was broad enough to include provision for any work, whether drain or levee, effectual for the purposes of reclamation. As a consequence, any subsequent amendment by mere reference to that act by section, article, and chapter, as it later appeared in the Revised Statutes, fell within the title so long as such amendment related to the general purposes of reclamation, and all subsequent amendments have related thereto and have been germane to the subject-matter of the Act of 1879. The fact that the Act of 1879 and subsequent amendments thereto have designated districts organized thereunder as "drainage districts" does not limit the activities of such districts to digging ditches, since both the title of the act and the act itself and the amendments thereof have always defined such districts in such manner as to include the broad, general methods of reclamation. The powers of such districts, expressly given, are not limited by a mere name conferred. One of the methods of reclamation is the construction of levees. The title of the Act of 1879 includes all methods of reclamation, using the general words "to reclaim and drain." The Act of 1879 clearly contemplated the construction of levees by districts organized under it, and the Act of March

24, 1913, expressly provides for the construction there-of. [Sec. 26, Laws 1913, p. 249.]

The act of April 7, 1913 (Laws 1913, p. 290 et seq.), does not provide an exclusive method for the organization of districts when the construction of levees is contemplated. The original act, from which the last has been developed by amendment, was passed in 1887 (Laws 1887, p. 208 et seq.). When it was passed there was no provision in our statutes whereby a district could be organized in the circuit court for the drainage and reclamation of swamp or overflowed lands except upon the petition of a majority in interest of the resident owners. [R. S. 1889, sec. 6517.] The Act of 1887 authorized the organization of a levee district upon the application of a majority in interest of the owners of lands sought to be protected. The Act of 1887 there-fore made provision for such organization, in particular circumstances, by others than those authorized to organize under the Act of 1879 and its amendments up to 1887. The Act of 1887, consequently, performed a different function, but was limited to particular kinds of lands. It did not, however, preclude a majority in interest of the resident owners from proceeding under the act of 1879 and its amendments. The fact that the Legislature, by successive amendments, has (Laws 1913, p. 232 et seq., and Laws 1913, p. 290 et seq.) brought the amended acts of 1879 and of 1887 into al-most exact harmony as to the character of the lands which may be included, the persons who may move for incorporation, and the methods to be employed in work-ing out the destiny of the district, does not destroy any part of the Act of March 24, 1913, or limit the powers thereby explicitly conferred upon districts organized thereunder. Neither of the acts pretends to provide an exclusive method for the accomplishment of its pur-poses.

The question is not whether the Legislature has pro-vided by a separate act for the organization by the

circuit court of districts empowered to construct levees. It is, on the contrary, whether districts organized under the act of March 24, 1913, are empowered to construct levees. For the reasons given we conclude they are so empowered.

II. (a) It is urged that section 10 of the act in question is unconstitutional because it provides that the plan of reclamation, as reported by the engineer, or modifications thereof as approved by *Delegation of Legislative Authority.* him after consultation, shall be adopted by the board of supervisors. It is insisted this is a delegation of legislative power to the engineer, and hence is invalid. First. This does not fall within the scope of the objections which the statute prescribes may be made at this stage of the proceedings, it not being contended this objection goes to the whole act. The statute (Sec. 4, Laws 1913, p. 235) limits such objections to a denial of the statements in the articles of association. Second. This question was not raised on the hearing. Third. The contention is untenable, since the provision of the statute criticized does no more than provide that the plan of reclamation as adopted is to be approved by an expert engineer the board selects. Some one must approve such plan, and it is no more a delegation of legislative power to require the engineer's approval than it is to require that the board shall adopt the plan before it becomes the plan of the district. Manifestly, the Legislature cannot provide detailed plans of reclamation in acts of this character.

(b) It is objected that the provision, in section 5 of the act, authorizing the selection of supervisors who do not reside in the district or county *Non-Resident Supervisors.* in which the district is situated, violates the principle that "jurors must be of the vicinage." This is answered by the reasons numbered "first" and "second" in the preceding paragraph (a),

and is untenable also because the supervisors are not jurors at all. They are selected simply to work out the purposes of the district, and the selection from territory broader than the district and county increases the probabilities of securing efficient supervisors.

Further objecting to section 5 of the act, counsel contend it is unconstitutional because it provides that in electing the first supervisors each "acre of land in the district shall represent one share, and each owner shall
Voting By Acres. be entitled to one vote in person or by proxy for every acre of land owned by him in such district." It is said this disfranchises those in the district who own less than one acre and those owning personalty only. Since personalty is not affected in any way under the act, the exclusion from voting of persons owing personalty only is not objectionable. Nor do counsel advance any argument to the contrary. So far as concerns the other point, the statute clearly states that each acre shall represent one share. It follows that each fraction of an acre represents a corresponding fractional portion of a share, and its owner is authorized to vote accordingly.

(c) The objection that the large sums necessary to construct the contemplated improvements will create an indebtedness in the form of taxes contrary to the
Excessive Indebtedness. constitutional limitation upon taxation cannot be maintained. Sums assessed against property as benefits under acts in principle like that under consideration have always been held not to be public taxes. [Embree v. Road District, 257 Mo. l. c. 610, 611.] The "first" and "second" reasons given under paragraph (a), supra, also apply.

(d) The objections to section 60 are not well
Prior Organization. taken, since that section applies only to districts organized prior to April 8, 1905, and cannot affect appellant..

III. It is insisted appellant's property was improvidently included in the district because (1) it is expressly excluded from inclusion by the provisions of section 39 of the act, and (2) its line is left exposed to overflow for many miles along the river front at points not included in the district

Inclusion of Railroad.

(a) Section 39 simply provides that the word "owner" as used in the act shall mean the owner of the freehold estate and shall not include reversioners, remaindermen, trustees or mortgagees, "who shall not be counted and need not be notified by publication, or served by process, but shall be represented by the present owners of the freehold estate in any proceeding under this act." This section does not exclude any one. It describes those the Legislature deemed it necessary to notify. Appellant's argument that it does not own the freehold and does not fall within the definition of "owner," if agreed to as sound, would not exclude it from the district, but would exclude it from this case as a necessary party if a literal construction is given the statute. The point is ruled against appellant.

(b) The fact that other parts of appellant's line, outside the district, would be left unprotected is of no consequence. The proposition that a drainage district must include the entire line of railroad along a river or none can be included, is one which answers itself.

Entire Line of Railroad.

IV. Upon the question whether the land proposed to be incorporated in the proposed district falls within the statute, the evidence conflicted to some extent. It appears that one-fourth of the land is clearly in need of drainage at all times. About one-tenth of it overflows only in times of very high water and the remainder has overflowed quite frequently in the last

Included Lands Within Statutory Designation.

score of years.  It also appears that portions of appellant's track have overflowed at times in recent years. This is, briefly, the great weight of the evidence.  This showing authorized the decree of incorporation.  That a part of the land is overflowed only in case of unusual freshets has been expressly held to be no just ground for excluding it from the district.  [Little River Drainage District v. Railroad, 236 Mo. 1. c. 112.]    In the same case it is held that "the extent to which a tract of land will be benefited does not go to the question of the propriety of including that land but rather to the amount of benefits to be assessed against" it.

V.   The argument that the work of reclamation will prove so costly that it will not be justified by the benefits which may accrue is untimely.  This objection

Costs and
Benefits.

must be made when the plan of reclamation has been adopted and the cost and benefits estimated.  [Sec. 37, Laws 1913, p. 253.]    If what is now argued in this connection proves true, then the court must dissolve the incorporation.  This the section mentioned specifically provides.

VI.   Some questions presented are founded upon the assumption that the words "other property" used frequently in the Act of March 24, 1913, mean personal

Other Property
Means Real
Estate.

property.  A careful examination of the whole act discloses that these terms are used merely out of an excess of caution that all interests in realty should fall within the purview of the act.  It is unnecessary to note every instance in which the words mentioned appear, but one or two examples may be given.  In section 19 of the act, the Legislature prescribes the form of the certificates to be issued by the board of assessors in levying assessments or taxes.  It is provided that this certificate shall set out the "names of the owners

of said lands and other property as they appeared in the decree of the court organizing said district; second, the descriptions of said lands and other property opposite the names of said owners; third, the amount of said installment of tax levied on each tract of real estate and other property." The certificate prescribed by section 23 for filing in the recorder's office to evidence the lien of assessments and taxes is like the preceding except that it reads: "Third, the amount of said taxes levied on each tract of land or piece of property." In section 18 the words used, in the same sense, are "all lands, railroad and other property." In section 43 they are "tract or parcel of land and upon corporate property." A fair interpretation of the whole act is that it does not refer to personal property.

VII.  Witnesses who had signed the articles of association were permitted to testify that they owned certain land. Others testified that they knew of their own knowledge that certain of the signers owned designated tracts within the district. Objection was made to some of this testimony.

**Objection to Testimony.**

In answer to a question asked the witness Wright, he stated that he knew of his own knowledge that the several signers of the articles of association owned, in the district, the respective number of acres set opposite their names. After he had answered an objection was made. Under a long line of authorities, the objection came too late. As a matter of fact no effort was made by appellant to dispute the truth of the statement that the signers of the articles owned the land they represented themselves to own. As to 1,300 acres, the owners thereof testified it was their property. We do not understand objection was or is made to this testimony.

Concerning 780 acres, the tenant in possession testified as to the persons under whom he held posses-

sion of the tracts. This was competent. [Railway Co. v. Norcross, 137 Mo. l. c. 427.] As to another tract of over 600 acres, an attorney who represented the owner testified he was familiar with the land, its ownership and title, and that it was owned as appeared from the articles of association. There was no objection made to this testimony. In the circumstances, the point is ruled against appellant.

This disposes of all questions presented in the briefs. The judgment is affirmed. All concur, except *Bond, J.,* not sitting.