AUGUST BAADE et al. v. EMMA CRAMER et al., Appellants.

Division Two, June 3, 1919.

1. **NEGOTIABLE INSTRUMENT: Extension: Consideration.** Interest notes given to cover the periods of extension, executed before the maturity of the principal note, constitute a sufficient consideration for the agreement, indorsed on said note, to extend the time of its payment.

2. ————: Prima-Facie Owner: Purchaser Without Notice: Due Course. The holder of a negotiable note indorsed in blank by the payee is prima-facie the owner, and is presumed to have taken it in good faith, for value, before maturity, without notice; and a bona-fide purchaser before maturity, for value, without knowledge that it has been paid or of other infirmity in the title of the holder or of his right to dispose of it appearing thereon, takes it burdened with no equities, and is a holder in due course.

3. ————: ————: ————: Evidence: Fraudulent Transfer. Upon its being shown that a note had been paid and that the possession and disposal thereof by the apparent holder were fraudulent, it becomes incumbent upon the purchaser to sustain his prima-facie title by evidence that he in ignorance of its defects obtained the note in good faith, for value, before maturity; and if the testimony to establish these facts is ample and substantial and is not controverted, it becomes conclusive.

4. ————: ————: Indorsement in Blank: Proof Aliunde. The rule that while the holder of an undue negotiable promissory note indorsed in blank is prima-facie the owner thereof it devolves upon its purchaser to prove the indorsement by evidence *aliunde*, was not violated if the indorsement was treated by respondent both in his pleading and during the trial as a conceded fact and was not an issue in the case; and such being the facts, the indorsement will not on appeal for the first time be considered as having been controverted by respondent.

5. ————: ————: ————: Neither Pleaded Nor Proven: Presumption In Absence of Reply. If neither the petition nor the answer put in issue the note's indorsement or expressly or by implication referred to the indorsement except in so far as defendant's allegation of ownership can be so construed, the trial of the case without a reply, no objection to its absence being interposed and the consequent presumption being that it was filed and constituted a general denial, does not impair the conclusion that the authenticity of the indorsement in blank was not an issue in the case.

6. APPELLATE PRACTICE: Facts Conceded At Trial. A review upon appeal will be restricted to questions arising in the trial court which have been properly saved for consideration. A defense not made either by pleading or proof will not be considered.

7. NEGOTIABLE NOTE: Assignment Before Maturity: Payment: Effect on Deed of Trust. The rule that the payment of a negotiable note extinguishes the deed of trust securing it, and that a failure to enter satisfaction on the record does not keep the deed of trust alive, has no application where an innocent purchaser for value, before maturity, acquires ownership of the note; for the assignment to a purchaser, for value, before maturity, without knowledge that it has been paid and without any infirmity ap-

pearing on its face of the holder's right to sell it, carries the title to the purchaser, and along with it as an incident thereto the deed of trust, free from all such defenses except such as could be made against the note, and is not affected by subsequent notice of equities of other parties.

8. ———: **Agreement to Extend.** Although the maker of a negotiable note did not indorse or authorize the indorsement thereon of a memorandum extending the time of payment, yet if it was made at his solicitation and in accordance with his agreement with the payee, in good faith and based on a sufficient consideration, and stated the conditions of the extension, the agreement constituted a valid and subsisting contract.

9. ———: ———: **Oral: Independent of Mortgage.** Extensions of a negotiable note, absent a memorandum indorsed thereon, can be established by parol testimony; and an agreement to extend the time of payment may be made verbally, and independently of the deed of trust given to secure the note.

10. ———: ———: **Maturity.** The validity of a contract to extend the time of payment of a note, made before maturity, being conceded, every successive taker is bound to take notice of the agreement, and to look, not only to its face, but to its indorsements, for the purpose of ascertaining whether an extension has been made; and if such indorsements reveal that there has been an agreement to extend, the note does not become due at the time mentioned on its face.

11. ———: ———: **Failure to Release Mortgage.** Where the purchasers of property knew, or could have known by an examination of the records, of the existence of a deed of trust securing a note which by its extension indorsements had not matured, but failed to have such deed of trust released before they paid the purchase money, depending in the matter upon the assurances of their agent that he would have it released, and such agent sold the note, indorsed in blank, before maturity, for value, without knowledge on the part of the assignee that it had been paid, such purchasers, and not the innocent assignee of the note, must bear the loss.

12. ———: **Innocent Parties.** Where the cause of the controversy is due to no intentional wrong perpetrated by either party to the suit, but both acted in good faith and gave full value for what they received, the one who placed a third party in a position to perpetrate the fraud must suffer the loss.

Appeal from St. Louis City Circuit Court.—*Hon. Glendy B. Arnold,* Judge.

REVERSED AND REMANDED.

*Harry H. Haeussler* for appellants.

(1) The holder of a negotiable not indorsed in blank by the payee is prima-facie the owner of it and he is presumed to hold it in good faith for value before maturity and without notice, and a purchaser from a party so in possession would obtain a good title. Miller v. Peoples Saving Bank, 193 Mo. App. 498; Allen v. Harris, 79 Mo. App. 490. (2) A maker of a note secured by deed of trust who is *sui juris* may re-issue the paper before or after maturity for a valid consideration so as to bind himself and his assigns as effectively as in the first instance. Kelly v. Staed, 136 Mo. 430; Sater v. Hunt, 66 Mo. App. 528; Curry v. Lafon, 133 Mo. App. 180; Devens v. Van Valkenburg, 192 Mo. App. 215. (3) The parties having left the note and deed of trust both uncancelled in the possession of a real estate agent whose business it was to negotiate loans and to sell same, clothed the agent with such authority as to bind them if the agent sold and re-issued said note and deed of trust to an innocent purchaser for value. (4) The extension of time of payment of the note secured by deed of trust at the request of the maker and with consent of the holder had the effect of extending the period of maturity of said note and a purchaser would take as a bona-fide holder for value before maturity. At least he would only take subject to any defense as between maker and payee, and not subject to any defense other than those connected with the note itself and not such as grow out of collateral transactions. Kelly v. Staed, 136 Mo. 436; Devens v. Van Valkenburg, 192 Mo. App. 215.

*W. F. Heideman* for respondents.

(1) Payment of the $1500 note by plaintiffs was a satisfaction of the mortgage securing the note; and failure to enter such satisfaction thereof on the margin of the record o fthe mortgage did not keep the

mortgage in existence. Jackson v. Johnson, 248 Mo. 680; Hagerman v. Sutton, 91 Mo. 531; McNair v. Picotte, 33 Mo. 57; Land Co. v. Zeitler, 182 Mo. 251; Adams v. Carpenter, 187 Mo. 613; Hancock v. Whybark, 66 Mo. 672; Baker, v. Halligan, 75 Mo. 435; Strine v. Williams, 159 Mo. 582; Pease v. Pilot Knob Iron Co., 49 Mo. 128; Ward v. Hildebrand, 46 Mo. 284; Kennett v. Plumber, 28 Mo. 145; Lipscomb v. Talbott, 243 Mo. 31. (2) Extension of time of the payment of a promissory note for a definite period is a new contract. Matthews v. Towell, 138 S. W. (Tex.) 169; 20 Cyc. 208. (3) Contracts not to be performed within one year are within the Statute of Frauds. Sec. 2783, R. S. 1909; Schultz v. Tatum, 35 Mo. App. 136; Donovan v. Brewing Co., 92 Mo. 341; 19 Am. & Eng. Ency. Law (2 Ed.), p. 942; Hain v. Burton, 118 Mo. App. 586; Vanstone v. Hopkins, 49 Mo. App. 391; Browning v. Walbrun, 45 Mo. 477; Cunningham v. Williams, 43 Mo. App. 629; Ivory v. Murphy, 36 Mo. 534; Welsh v. Heim Brew. Co., 47 Mo. App. 608; Black & Snyder v. Crowther & Andriano, 74 Mo. App. 480. (4) It devolves upon the holder of a note to prove, by evidence *aliunde* the indorsements, that the indorsements purporting to be extensions of its payment were made before maturity, by either the maker thereof, his assignee or his duly authorized agent. Nance v. Hayward, 183 Mo. App. 219; McMahon v. Welsh, 132 Mo. App. 599; Hugumin & Co. v. Hinds & Weissgerber, 97 Mo. App. 352. (5) A party acquiring a note through an agent after its maturity, takes it subject to the equities then existing between the parties; and the principal is charged with notice of all the facts made known to the agent in the transaction. Livermore v. Blood, 40 Mo. 48; Kellogg v. Schnaake, 56 Mo. 136; Sec. 10022, R. S. 1909; 4 Am. & Eng. Ency. Law (2 Ed.), p. 306. (6) A party acquiring a promissory note from his own agent, who is negotiating it in breach of faith, or under circumstances amounting to fraud, is charged with notice of such breach or fraud. Sec. 10025, R. S. 1909. (7) Suit to determine title to real estate under

Section 2535, Revised Statutes 1909, is an action at law, and if the findings of the trial court are sustained by substantial evidence, the same are binding on the appellate court. Walker v. Roberts, 204 S. W. 18; Hatton v. St. Louis, 264 Mo. 634; Kansas City v. Smith, 238 Mo. 334; Withers v. Railroad, 226 Mo. 396.

WALKER, J.—This is a suit to quiet title to certain real estate in the City of St. Louis, under Section 2535, Revised Statutes 1909. Upon a trial, there was a judgment for the plaintiffs, from which defendants appeal.

Henry Krehmeyer and his wife, Minnie, the former now deceased, were on the 27th of May, 1908, the owners in fee of the real estate, consisting of a lot on Lee Avenue, in the City of St. Louis, as tenants by the entirety. On said date Krehmeyer conveyed this lot to F. W. Herbkesmann, in trust for John F. Behrend, to secure a note to the latter for $1500, then made by grantors to him, due three years after its date, with semi-annual interest notes covering the period of the loan. This deed of trust was recorded in the Recorder's office of the City of St. Louis.

On December 24, 1913, the Krehmeyers, through an agent, one Chas. C. Crone, sold said lot to plaintiffs and conveyed same to them by a deed of general warranty for the sum of $1850. Of this amount, $50 was then paid to Crone by plaintiffs as earnest money. Two days later, December 26, 1913, they gave Crone their check for $800, and their joint note for $1000, secured by a deed of trust on the land. Prior to this transaction one Toenges had become the owner of the $1500 note and deed of trust securing same, made by the Krehmeyers to Behrend. Upon the consummation of the sale of the lot to plaintiffs, Crone notified Toenges and requested him to surrender the $1500 note for payment and the deed of trust securing same. When Toenges complied, Crone gave him plaintiff's note for $1000 and his personal check for the balance due, and a deed of trust securing the payment of the note. Crone thereupon had plaintiffs'

deed of trust recorded. When Crone gave Toenges the recorded deed of trust and a certificate of title to the property, Toenges noticed that the deed of trust securing the $1500 note had not been released and called Crone's attention thereto. The latter then placed this memorandum on the certificate of title opposite the entry concerning the deed of trust: "Paid C. C. C.," and stated to Toenges that the deed of trust had then been released, but he had overlooked marking it off of the certificate. This, as was afterwards shown, was not true. Crone had theretofore sold to Emma Cramer, one of the defendants herein, a $2000 note secured by a deed of trust purporting to have been executed by one Woerler. Thereafter, on July 25, 1914, Crone called at Emma Cramer's residence and informed her that he then had two better deeds of trust aggregating $3000, which he would exchange for the $2000 note and deed of trust theretofore sold to her, she to pay him the difference. He showed her the Krehmeyer $1500, deed of trust which had been paid in full December 26, 1913, by plaintiffs, but which he had retained possession of without having it released, and another deed of trust for $1500, purporting to have been executed by one John Grundo. Emma Cramer accepted these notes and deeds of trust, surrendered to Crone the Woerler $2000 note and deed of trust securing the payment of same, and gave him in addition her check for $1000.

The principal note, which had been made by the Krehmeyers to Behrend, and indorsed in blank by the latter to Toenges is as follows:

"$1500.00. St. Louis, Mo., May 27, 1908. Three years after date we promise to pay to the order of John F. Behrend fifteen hundred dollars, value received at the office of C. C. Crone, in St. Louis, with interest at the rate of eight per cent per annum from maturity. Henry Krehmeyer. Secured by Deed of Trust. Minnie Krehmeyer." (Indorsed): "John F. Behrend."

On the back of same there appeared two extensions of payment in the following words:

"St. Louis, May 27, 1911. Payment of within notes extended for two years from May 27, 1911, provided the four interest notes dated May 27, 1911, each for forty-five dollars executed by Hy. and Minnie Krehmeyer, and payable to the order of James P. Wilton in six, twelve, eighteen and twenty-four months and given for said extension, be promptly paid when due.

"St. Louis, May 27, 1913. Payment of within note extended for three years from May 27, 1913, provided the six interest notes dated May 27, 1913, each for forty-five dollars executed by Minnie Krehmeyer and payable to the order of James P. Wilton in six, twelve, eighteen, twenty-four, thirty and thirty-six months and given for said extension, be promptly paid when due."

The interest notes given upon the extensions of the payment of the principal note, except as to differences in their dates and times of payment, are as follows:

"$45, St. Louis, Mo., May 27, 1913. Twenty-four months after date I promise to pay to the order of James P. Wilton forty-five dollars, value received at office of C. C. Crone, in St. Louis, with interest at the rate of eight per cent per annum from maturity. Secured by deed of trust. Minnie Krehmeyer." Indorsed: "Without Recourse on Me. James P. Wilton."

August Baade, one of the plaintiffs, testified as follows: That he and his wife bought the property described in their petition from Mrs. Krehmeyer through her agent, C. C. Crone; that a warranty deed was executed to them by Mrs. Krehmeyer, December 25, 1913, in which the deed of trust theretofore executed by her and her husband on May 27, 1908, was not mentioned. That the price paid for said property by them was $1850, made up of $850 in cash and a deed of trust executed by them to Mrs. Krehmeyer at the time of the purchase of the property to secure the payment of a principal note in the sum of $1000; that C. C. Crone, as the agent of Mrs. Krehmeyer in the sale of the property, agreed to release the $1500 deed of trust executed by Mr. and Mrs. Krehmeyer, and to pay off the note then

held by Toenges with the $850 in cash paid by plaintiffs to Crone and the $1000 note and deed of trust executed by them; that the first knowledge they had of Crone's failure to release the $1500 deed of trust was in May, 1915, when various fraudulent transactions .of Crone were brought to light.

Toenges' testimony in regard thereto is as follows: That he had been the owner from April, 1913, of the $1500 note executed by Minnie and Henry Krehmeyer, dated May 27, 1908; that he surrendered all of the papers pertaining to said loan with the exception of the principal note to C. C. Crone on December 22, 1913, and later on January 22, 1914, surrendered said principal note to C. C. Crone in exchange for the $1000 deed of trust executed by the Baades (the plaintiffs), and $500 in cash. That he was the owner of the $1500 Krehmeyer note on May 27, 1913, when payment of same was extended for a period of three years from May 27, 1913, and that an indorsement to that effect was placed on the principal note and six semi-annual interest notes executed by Minnie Krehmeyer, were delivered to him and he consented to said renewal. That, after said renewal, he collected one interest note, and on January 22, 1914, surrendered the remaining five interest notes with the principal note to C. C. Crone. That when he received the $1000 note of the Baades from Crone, he also received a certificate of title in which the $1500 deed of trust was still shown as unreleased on the record, and upon objection to same by him, and a demand that it be released, Crone indorsed on said certificate of title opposite said memoranda of deed of trust: ''Paid C. C. C.''

Mrs. Krehmeyer, one of the original payees in the $1500 note, testified as follows: That she was the widow of Henry Krehmeyer; that they had owned the property described in plaintiffs' petition and that she was the owner of same on May 27, 1913, and at the time of sale to August and Anna Baade, on December 24, 1913. That she and her husband had executed the

note for $1500 dated May 27, 1908, and identified their respective signatures to same. That on May 27, 1913, she requested an extension of the time of payment of said $1500 note for a period of three years and executed renewal interest notes for the sum of $45 each and identified as hers the signature to each of same. That she paid said interest notes as they came due every six months. That she did not indorse any extension on the principal note, nor authorize same to be done.

The testimony of Emma Cramer who purchased the $1500 note of the Krehmeyers from Crone, was as follows: That on June 24, 1914, she was the owner of a $2000 note secured by deed of trust executed by one Woerler; that on July 25, 1915, at the request of C. C. Crone, she exchanged the Woerler note and deed of trust and $1000 in cash for two notes of $1500 each, one executed by John Grundo, and the other by Mrs. Krehmeyer and secured by deeds of trust; that at the time of said purchase C. C. Crone made out a statement of the transaction, which statement witness identified. Witness further stated that at the time, July 25, 1914, she had no knowledge of any payment of the $1500 Krehmeyer note, nor did she have any knowledge of any transaction between Mr. C. C. Crone and Mr. Toenges in relation to same.

I. The extensions of the time of payment of the original note for $1500 made by the Krehmeyers to John F. Behrend, and by him indorsed in blank to Robert L. Toenges, were made before the maturity of **Negotiable Note.** the note. The giving of the interest notes to cover the periods of extension constituted a sufficient consideration for the agreement to extend the time of payment. [Johnson v. Grayson, 230 Mo. 380; Nelson v. Brown, 140 Mo. 580; Mer. Ins. Co. v. Hauck, 83 Mo. 21; Stillwell v. Aaron, 69 Mo. 539; Hosea v. Rowley, 57 Mo. 357.] The term of the last extension had not expired when Emma Cramer obtained the note from C. C. Crone. She purchased it for value with no

knowledge of its having been paid, and was authorized in concluding that Crone was the prima-facie owner of same, or in the absence of any evidence on the subject, that he held it in good faith for the owner with authority to dispose of it, as indicated by its indorsement in blank and the fact that it was not overdue. This conclusion is supported by the rule, that where a negotiable note is indorsed in blank by the payee, the holder of same is prima-facie the owner, and is presumed to have taken it in good faith, for value, before maturity, without notice; and by the correlative rule, that a bona-fide purchaser for value with no knowledge of the infirmity of the title of the holder of the note and all the indicia of ownership and the right to dispose of same appearing thereon, takes it burdened with no equities and is a holder in due course under the uniform rulings of the courts, and by express statutory declaration, despite the fact that it may have been fraudulently obtained or was thus being disposed of. [Sec. 10022, R. S. 1909; Horton v. Bayne, 52 Mo. 531; Corby v. Butler, 55 Mo. 398; Greer v. Yosti, 56 Mo. 307; Bennett v. Torlina, 56 Mo. 309; Merrick v. Phillips, 58 Mo. 436.] Upon its being shown that the note had been paid and that the possession and disposal of same by Crone was fraudulent, it became incumbent upon Emma Cramer to sustain her prima-facie title by evidence that in ignorance of its defects she obtained the note in good faith, for value. [Sec. 10029, R. S. 1909; Keim v. Vette, 167 Mo. 389; Famous Shoe Co. v. Crosswhite, 124 Mo. l. c. 39; Fitzgerald v. Barker, 96 Mo. 661; Mayes v. Robinson, 93 Mo. 114; Hamilton v. Marks, 63 Mo. 167; Miller v. Bank, 193 Mo. App. 498.] The testimony introduced by her in this behalf was ample to establish these facts and was not attempted to be controverted. It, therefore, became conclusive.

II. But, it is urged by plaintiffs, that no evidence *aliunde* the note was introduced to prove the indorsement. This point is first raised in plaintiffs' brief. The petition

**Indorsement.** alleged that Emma Cramer was the owner, holder or in control of the note and deed of trust, and that she refused to deliver same to plaintiffs that it might be canceled, and that they had no knowledge of the nature of her claim. In her answer in this behalf, she simply admits ownership and the possession of the note with the indorsements of extension thereon, that she became the owner thereof in due course for the sum of $1500, with the deed of trust securing same, and that she was then the owner, and that the note was due and remained unpaid. There was no reply filed. On the trial, plaintiffs proffered no proof in regard to the indorsement, and defendant, Emma Cramer, introduced the note with the indorsements thereon, but offered no other evidence in regard thereto. No objection was interposed to this manner of proof, nor was the authenticity of the indorsement otherwise attempted to be questioned. The rule that while the holder of an underdue negotiable promissory note, indorsed in blank, is prima-facie the owner thereof under Section 10004, Revised Statutes 1909, it devolves upon such holder to prove the indorsement of same by evidence *aliunde* the indorsement (Nance v. Hayward, 183 Mo. App. l. c. 219, and numerous cases there cited), was not violated by the course pursued in this case. This for the reason that the indorsement was treated by the plaintiffs both in their pleading and in the course of the trial, as a conceded fact, and was not in issue in the case (Worrell v. Roberts, 58 Mo. App. 197), and cannot be considered here for the first time as having been controverted.

In Stillwell v. Patton, 108 Mo. l. c. 363, it was contended by appellant that the court erred in not instructing the jury in addition to other formal requirements necessary to a recovery, that they must find that the original payee had indorsed or assigned the note to the plaintiff. It appeared that this fact had not been pleaded and the real issues were, therefore, only to be determined by an examination of the evidence. The

court, in discussing the question, said: "There is an abundance of evidence that the payee of the note and her husband indorsed and delivered the same to Stillwell. This is shown by the evidence produced on both sides, and the fact is controverted by no one. It passed as 'a conceded fact in the case, and, hence, no instructions were asked on this subject by either party. The question is evidently made for the first time in this court. As the assignment was duly proved and not questioned on the trial, the omission in the instruction does not constitute reversible error."

In Morris v. Case, 4 Kan. Ct. App. 691, under a state of facts similar to those at bar, the court held in effect, that the failure by the plaintiff to atempt either by plea or proof to controvert the indorsement may be construed to mean that an absence of indorsement or a failure to establish same was not relied on to sustain the action. The contention, however, may be disposed of under a more general rule of procedure. Not only within the contemplation of the statute (Sec. 2081, R. S. 1909.), but under repeated judicial rulings, is it established that a review upon appeal will be limited to questions arising in the trial court, which have been properly saved for consideration. [In re Birmingham Drain. Dist. v. Railroad, 266 Mo. 60, 178 S. W. 893; In re Aiken, 262 Mo. 403, 171 S. W. 342; Kirksville v. Ferguson, 262 Mo. 661; Ice Co. v. Kuhlmann, 238 Mo. 685.] The application of this rule is appropriate here and constitutes a sufficient basis for a ruling adverse to plaintiffs' contention.

The trial of the case without a reply, no objection to its absence being interposed, and the consequent presumption that it was filed and constituted a general denial (McMurray v. McMurray, 258 Mo. l. c. 416; Brewster v. Land Imp. Co., 247 Mo. l. c. 226; Bird v. Fox, 193 S. W. [Mo.] 941) does not militate against the correctness of the conclusion that the quantum of proof necessary to establish the authenticity of the indorsement was in any wise made an issue in the case As

stated, neither the petition nor the answer referred expressly or by implication to the indorsement, except so far as defendant Emma Cramer's allegation of the ownership of the note can be so construed. There was, therefore, nothing in this regard to which the general denial could be made applicable. In short, the authenticity of the indorsement was not in issue.

III. A review of the facts in the cases cited by plaintiffs in support of the contention that the payment of the $1500 note extinguished the deed of trust securing same, and that the failure to enter satisfaction on the record did not keep the deed of trust in existence, shows that the rule as announced in these cases has no application where an innocent purchaser for value, before maturity, acquires the ownership of a note secured by deed of trust, as at bar. Upon the making and delivery of the note and the execution of the deed of trust to secure same, the latter became an accessory or incident to the former; or as Lord MANSFIELD said, in Martin v. Weston, 2 Bur. l. c. 979, cited with a approval in Lipscomb v. Talbott, 243 Mo. l. c. 31: "A mortgage is a charge upon the land; and whatever would give the money, will carry the estate in the land along with it, to every purpose. The estate in the land is the same thing as the money due upon it. It will be liable to debts: it will go to executors. The assignment of the debt, or forgiving it, will draw the land after it, as a consequence; nay, it would do it, though the debt were forgiven only by parol; for the right to the land would follow, notwithstanding the Statute of Frauds."

*Deed of Trust.*

Under the facts at bar, the general rule thus announced is applicable, that the assignment of a note passes the interest in a deed of trust given to secure the payment of same. While it is true that the security can have no separate existence apart from the debt and expires when the latter is paid, payment is not presumed to have been made where the facts are, as in

278 Mo.—34

the instant case. and so far as the innocent holder
for value is concerned, upon the transfer to her of the
note, the deed of trust passed as an incident thereto,
free from all defenses except such as could be made
against the note (Morrison v. Roehl, 215 Mo. l. c. 553;
Borgess Inv. Co. v. Vette, 142 Mo. l. c. 573; Devens v.
Van Valkenburg, 192 Mo. App. 215), and is not affected
by subsequent notice of equities or defense of other
parties. [Fitzgerald v. Barker, 96 Mo. l. c. 663; Mayes
v. Robinson, 93 Mo. 114; Hagerman v. Sutton, 91 Mo.
l. c. 533.]

IV. The contention is made that the extensions in
the time of payment of the $1500 note were invalid, be-
cause Mrs. Krehmeyer, one of the original makers,
testified that she did not indorse or authorize
the indorsement on such note of the memo-
randa of the extensions. She did testify, however, that
it was at her and her husband's solicitation, as original
makers, that the times of payment were extended, that
the extensions were granted in accordance with their
agreement made with the original payee, and that the
memoranda on the note correctly stated the conditions
of such extensions. Made in good faith and based, as
we have heretofore stated, upon a sufficient con-
sideration this agreement constituted a valid and sub-
sisting contract. Absent the memoranda, the extension
could have been established by parol testimony (Hey-
wood v. Perrin, 10 Pick. 228); and if the agreements
to extend had been verbal, they would have constituted
an effectual bar to an action on the note, brought with-
in the extended time (Fisher v. Stevens, 143 Mo. 181;
Black v. Epstein, 93 Mo. App. 459). It has been held else-
where, in harmony with our ruling as to the accessory
relation of a deed of trust to the note it is given to
secure, that an agreement for an extension of time to
pay the note may be made verbally and independently
of the mortgage (Condon Natl. Bk. v. Rogers, 60 Ore.
189, 31 Ann. Cas. 101). In view of the fact that the in-

*Extension.*

dorsements of the extensions spoke the truth, there is no merit in the contention that they are invalid because not manually made or immediately directed by the makers. To all intents and purposes, they were the acts of the makers as well as of the original payee, and are to be so regarded.

V. It is further contended, somewhat timorously, that the extensions of the time of payment did not defer the maturity of the note, and that it became due as stated on its face. The validity of the contract to extend being conceded, as it must be in the presence of the facts, every successive taker of the note was bound to take notice of the agreement and was required not only to look to its face for the time of its maturity, but to the indorsements thereon, to determine whether or not any agreement or extension of time had been made in regard to its payment [Coffin v. Spencer, 39 Fed. 262.] As was said in effect, in Whitehouse Bank v. White, 136 Tenn. 634, 191 S. W. 332, while a note as executed is stipulated to mature on a day fixed and certain, if the maker and the payee agree to an extension of its payment, a new date of maturity is fixed no less certain than the original note. This contention is therefore overruled.

*Maturity.*

VI. The moving cause of this controversy is not due to an intentional wrong sought to be perpetrated by either of the parties. They dealt in good faith and gave full value for what they received. Under such circumstances, when one of two innocent persons must suffer for the wrongful act of another, he must suffer who placed the party doing the wrong in a position to do it. [Neuhoff v. O'Reilly, 93 Mo. 164.]

*Innocent Parties.*

The plaintiffs knew, or could have known, by the exercise of that care which should characterize a transaction of this nature, of the existence of the deed of trust securing the note which they paid in effecting the

purchase of the property. Clothed with this knowledge, or with opportunity to obtain same in the fact that the deed of trust was upon record, they were remiss in not securing its release, but with confidence in the integrity of Crone, left the matter to be attended to by him. That he was afforded an opportunity to, and did, betray this trust is due wholly to their omission. Under no authorized construction of the facts can the defendant Emma Cramer be chargeable with any participation in or knowledge of his fraudulent transactions. It, therefore, becomes our duty to reverse and remand this case, that it may be proceeded with in accordance with the views herein expressed. It is so ordered. All concur.