FANNIE B. PIERPOINT, Administratrix of the Estate of JAMES E. PIERPOINT, SR., v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a Corporation; O. M. KRUEGER, JOHN R. MASTERS, and CARRIE MASTERS, His Wife; J. E. PIERPOINT, JR., and HELEN POWELL, Appellants.—No. 38092.—167 S. W. (2d) 64.

Division Two, January 4, 1943.

*A. F. Harvey* for appellants.

*Wright & Ford, W. F. Wilkinson* and *W. Raleigh Gough* for appellant, The Prudential Insurance Company of America.

*Livengood & Weightman* and *DuBois & Miller* for respondent.

634

WESTHUES, C.—This proceeding was instituted in the circuit court of Nodaway county, Missouri, to set aside a release of a deed of trust, to establish the same as a first lien against certain real estate and also to foreclose the same to satisfy a note described in the deed of trust in the principal sum of $9,000.00. The trial court granted the relief prayed for and all defendants appealed.

Because of a change of venue the case was tried in Harrison county, Missouri. We find little dispute in the record as to the principal facts. Plaintiff, Fannie B. Pierpoint, filed the suit as administratrix of the estate of her deceased husband, Dr. J. E. Pierpoint, who died on July 14, 1938. Plaintiff and the deceased were married in the year 1906. Both had been previously married. Plaintiff had a son,

Douglas Haines, by her first marriage and deceased had a son, J. Everett Pierpoint, Jr., by his first marriage. Plaintiff and the deceased's son were the only heirs of the deceased. After the death of Dr. Pierpoint, plaintiff, her son and J. E. Pierpoint, Jr., opened the lockbox in which the doctor had kept his papers. In it they found two insurance policies made payable ▆▆▆ to J. E. Pierpoint, Jr., a deed to the home place and also the note and deed of trust, the subject matter of this lawsuit. The note had been endorsed to the son in the following manner: "Pay to the order of J. E. Pierpoint, Jr.", and was signed by James E. Pierpoint. Plaintiff and J. E. Pierpoint, Jr., took the box to the office of the probate judge where the contents were examined. The probate judge handed the insurance policies to the son stating that they belonged to him. He also handed the note and deed of trust to the son with the statement, "This is your note." The deed to the home place, which was held by plaintiff and her husband jointly, was given to plaintiff. The probate judge advised these parties that there was no property over and above that to which the widow was entitled under the law and advised that they apply for an order of a refusal of administration. Plaintiff thereafter made an affidavit stating therein that James E. Pierpoint, her husband, died leaving an estate valued at less than $2,000.00. The property listed was valued at $1,995.00. The note here in question was not referred to. The probate court thereupon made an order refusing letters of administration.

The following September J. E. Pierpoint, Jr., entered into negotiations for a settlement with John R. Masters and Carrie Masters, his wife, signers of the note in question. The land described in the deed of trust securing the note seems not to have been worth the amount due on the note. The Masters agreed to pay, and Pierpoint agreed to accept $5,000.00 in full settlement of the obligation. Thereupon the Masters secured a loan of $2,500.00 from the defendant, Prudential Insurance Company, and gave their note and deed of trust upon the land in question as security therefor. The Masters also obtained $2,300.00 from a sister of Mrs. Masters, who is the defendant Helen Powell, and by deed conveyed a one-third interest in the land to her for the $2,300.00. The money thus obtained was paid to J. E. Pierpoint, Jr., and he thereupon executed a deed of release. The note was also presented to the recorder of deeds and the deed of trust released by the following notation written on the margin of the record:

"The note, duly assigned, was produced and cancelled in the presence of the Recorder. Attest: Pearl Crawford, Recorder. For release see Book 159 at page 391."

At the book and page mentioned was recorded the deed of release above referred to, duly executed by J. E. Pierpoint, Jr. The deed of trust of the Prudential Insurance Company and the deed of Helen

Powell were also recorded. All of these parties were made defendants, as well as O. M. Krueger, trustee in the deed of trust of the Prudential Insurance Company. John R. Masters died while the suit was pending and his interests were represented by Carrie Masters, his wife. There are no creditors' rights involved in this proceeding.

The above facts were not disputed. Plaintiff testified that at the time the note was delivered to defendant Pierpoint by the probate judge she relied upon the advice of the probate judge and did not understand her rights; that she thought the judge knew the right thing to do; that later she consulted a lawyer and ascertained that since the note had not been delivered to defendant Pierpoint during the lifetime of the deceased, the gift, if it were a gift, of the note was not complete and belonged to the estate and she was entitled to a one-half interest therein; that thereafter she went to defendant Pierpoint and demanded her rights; that he was living in Kansas City at the time, but she saw him at Skidmore and he promised to compromise the matter; that he asked her to come to Kansas City for that purpose but that she never went. Defendant Pierpoint denied having any such conversation with plaintiff. Plaintiff further testified that she saw the Masters and had a conversation with them. The conversation, as testified to by plaintiff's sister who was present at the time, was as follows:

"Q. Now I wish you would tell the court what conversation you heard between your sister and John Masters. A. Well he was just coming out of the gate and she says 'has Everett Pierpoint sold this place' and he said 'no, but he says I told Roxy I wanted to rent it', that's all was said, and we drove off."

This witness also testified that plaintiff showed her the note in question on Monday after the death of Dr. Pierpoint, which was before the visit to the probate judge's office. Again, plaintiff, testified that she and her husband jointly owned the homeplace; that she paid one-half of the purchase price and one-half of the improvements which totaled approximately $20,000.00. It was the deed to this property that was found in the box and given to plaintiff by the probate judge. That fact, however, has no bearing on the issues in this case. There was much evidence introduced which in our opinion had no bearing on the issues. For example, it was shown that defendant Pierpoint agreed in writing to pay his father's funeral expenses and some other expenses in consideration for his father's Masonic ring and other items, and that he also agreed to make no further claim against the estate. The defendant Pierpoint did attempt to show that the note was in fact his property. It was shown that the present note was a renewal note and that the previous note, which was introduced in evidence, had been endorsed to him in the following manner:

"For value received this note is assigned to my son J. Everett Pierpoint, Jr. together with all rights under the deed of trust securing the same."

For the purpose of this case we will assume that since the note and deed of trust were found in possession of the deceased they belonged to the estate. Since there were no creditors, and since plaintiff and defendant Pierpoint were the only heirs, they were the only parties interested in the note.

We are unable to find any theory upon which the judgment of the trial court can be sustained. Leaving out of consideration the rights of the defendants, Prudential Insurance Company and Helen Powell, we are of the opinion that the rights of the Masters are superior to those of the plaintiff. Defendant Pierpoint had possession of the note. The endorsement to him was genuine. The Masters paid $5,000.00 to satisfy the note and have the deed of trust released from the record. Under the law the Masters had the right to rely upon these facts and it was not for them to search for defects in Pierpoint's apparent ownership of the note. There was a record in the office of the probate court consisting of an order of refusal of letters of administration and the application and affidavit of plaintiff herself to the effect that there was no other property belonging to the estate except such as was listed, being less than $2,000.00 in value. Note the provisions of Missouri Revised Statutes Annotated, sec. 3103 (R. S. Mo. 1939):

"Payment is made in due course when it is made at or after the maturity of the instrument to the holder thereof in good faith and without notice that his title is defective."

Also note section 3032 of the same statute which provides as follows:

"And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved."

The question is, was there anything in this case to put the Masters on guard as to any defect in the ownership of this note or that plaintiff was making any claim therein? We think not. The following question asked by plaintiff of John Masters seems to us to assume that the defendant had authority to foreclose the mortgage: "Has Everett Pierpoint sold this place?" The answer of Masters plainly indicated that Pierpoint was asserting some rights therein. Note the answer: "No, but he says I told Roxy I wanted to rent it." Plaintiff at that time said nothing to the Masters which would indicate she too claimed some rights in the note. This, in face of the fact that Masters by his statement indicated his status as an owner of the premises might change to that of a renter. Under the statutes above referred to and the ruling cases the rights of the Masters are superior to those of the plaintiff. The recorder of deeds complied with his duty when he entered on the margin of the record the fact that the

note had been assigned, produced and cancelled and that the deed of trust was released. Section 3465 of the Missouri Revised Statutes Annotated (R. S. Mo. 1939), provides in part as follows:

"In case satisfaction be acknowledged by the payee or assignee, or in case a full deed of release is offered for record, the note or notes secured shall be produced and canceled in the presence of the recorder, who shall enter that fact on the margin of the record and attest the same with his official signature; and no full deed of release shall be admitted to record unless the note or notes are so produced and canceled, and that fact entered on the margin of the record and attested as above provided."

The proper party to release a note is the true holder thereof. In this case J. E. Pierpoint, Jr., was the assignee and holder of the note. Ripley Nat. Bank v. Conn. Mut. Life Ins. Co., 145 Mo. 142, 47 S. W. 1. Granting for the sake of argument ▉ that we are dealing with two innocent parties, plaintiff on the one hand, the Masters, the Prudential Insurance Company and Helen Powell on the other, the equities are clearly on the side of the defendants named. It was plaintiff who permitted the note to be delivered to defendant Pierpoint and took no action until the Masters, the Prudential Insurance Company and the defendant Powell had parted with their money. In such circumstances plaintiff must take the loss. Tower Grove Bank & Trust Co. v. Duing, 346 Mo. 896, 144 S. W. (2d) 69, l. c. 72 (5); Baade v. Cramer, 278 Mo. 516, 213 S. W. 121, l. c. 126 (13).

▉ In respondent's brief it is asserted that it was the duty of appellants to follow up the information suggested by the irregular release. As pointed out above the release of the deed of trust was in every way regular and in compliance with the statute. In respondent's brief it is also asserted that J. E. Pierpoint, Jr., had no authority to make the release and therefore it was void. The cases cited in support of this contention involved forgeries, fraud or false affidavits. See Hudler v. Guerdan, 113 S. W. (2d) 1039; Crecelius v. Home Heights Co., 217 S. W. 508, l. c. 510, 511 (4); Wilkins v. Fehrenbach, 180 S. W. 22. Plaintiff's right to a share in the note was based entirely upon the fact that the note was not delivered to Pierpoint, Jr., during the lifetime of his father. Had she objected to the delivery of the note at the time the probate judge handed it to Pierpoint she may have maintained her right solely upon the proposition of law that nondelivery of a gift renders it incomplete. Pierpoint, Jr., claimed to be the actual owner of the note. He introduced evidence tending to prove that a large portion of the money which his father invested in the note was received from a streetcar company in St. Joseph, Missouri, as damages for the death of his mother; that his father made statements to the effect that he was going to invest the money for his daughter and son. The daughter later died without issue. It was shown that the note of which the one in controversy was a

renewal was also assigned to Pierpoint, Jr. It may be that those circumstances led plaintiff to believe the son was in reality the owner of the note, and therefore she did not object until she found that under the law the gift was not complete because of nondelivery. We make the latter comments to demonstrate that Pierpoint acted honestly in the belief that he was the real owner of the note and that he had some basis for such belief.

It follows that the judgment of the trial court must be reversed with directions to that court to set aside its judgment and enter an order dismissing plaintiff's petition. It is so ordered. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.