Adele E. RODEKOHR et al., Plaintiffs-Respondents,

v.

Trolius GIBSON et ux., Defendants-Respondents,

Regional Realty and Investment Company, a Corporation, Defendant-Appellant.

No. 24564.

Kansas City Court of Appeals.

Missouri.

April 3, 1967.

Martin B. Dickinson, William Marsh, Kansas City, for appellant.

James H. Ottman, Russell S. Noblet, Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, for respondents.

JAMES W. BROADDUS, Special Commissioner.

This is an appeal by Regional Realty and Investment Company, one of the defendants, from a judgment in a court-tried case declaring that appellant Regional holds as trustee for plaintiffs-respondents Rodekohr a note made by defendants-respondents Gibson for $15,000, on which $255 was to be credited, and ordering said note to be assigned to respondents Rodekohr and delivered to them with the deed of trust securing said note.

The case was tried on the pleadings and a stipulation of facts, which stipulation incorporates several documentary exhibits.

The issue is whether appellant Regional or the plaintiffs Rodekohr must bear the loss resulting from the defalcation of a real estate broker of $14,198.15, the net proceeds of a loan made by appellant Regional to defendants Gibson in connection with the latter's purchase of certain real estate from the plaintiff's Rodekohr.

Plaintiffs Rodekohr owned the real estate at 6042 Indiana Avenue in Kansas City. On April 27, 1963, they listed their property for sale with Kenneth C. Conway Realty Company, and Kenneth C. Conway, the proprietor of said business, obtained an FHA appraisal of the property for loan purposes. On August 21, 1963, Conway obtained an offer of $15,500 from defendants Gibson, which was accepted by plaintiffs Rodekohr. Said parties promptly executed a real estate contract. Under the contract the earnest money was deposited with Conway, and the contract was to be closed at his office by delivery of a deed and payment of the purchase price. It was "to be financed on an FHA loan for thirty years". Before execution the contract was examined and approved, without change, by plaintiffs' counsel.

Conway prepared the necessary FHA loan application documents and submitted them to appellant Regional, which agreed to make the desired loan. After obtaining a title report, Conway asked plaintiffs to send in their warranty deed. On September 21, 1963, plaintiffs executed their deed conveying the property and delivered the deed, with no directions or instructions, to Con-

way so that the matter could be closed. Plaintiffs knew that their deed conveyed their title, and that they were not to receive the balance of the purchase price at that time. On the same day the defendants Gibson executed a note for $15,000 payable to appellant Regional, with a deed of trust securing the same, and delivered them to Conway. On September 23, 1963, Conway obtained from plaintiffs approval of the loan discount of $450, of which document appellant had no knowledge. Conway at the same time informed plaintiffs of other expenses chargeable to them, and obtained their authorization to deduct and withhold the same.

The warranty deed, note, deed of trust and other documents, not including a sellers closing statement, were sent by Conway to appellant, which forwarded the warranty deed, deed of trust, and note to McDaniel Title Company for recording, and the deed and deed of trust were filed for record on September 27, 1963. Appellant had no direct contact with either plaintiffs or defendants Gibson and received no instructions or documents from either of said parties except through Conway.

On October 4, 1963, appellant issued its check for $14,198.15, being the net proceeds of the loan, according to its statement, to Kenneth C. Conway Realty Company, and Kenneth C. Conway acknowledged receipt of the check and that his company would be responsible for disbursing all of the funds except selling expenses chargeable to plaintiffs. On the same day Conway told plaintiffs they should have their money either the following Monday or Tuesday. Plaintiffs expected no one else to come to them, but expected Conway to have the money for them on one of the days stated. On the same day, October 4, 1963, Conway cashed said $14,198.15 check, and, so far as known to any of the parties, appropriated all the money to his own use.

The only question involved here is: Does an agent's possession of and authority to deliver a warranty deed authorize payment to the agent, either in cash or by check made payable to the agent?

■ In Missouri and in the majority of the other jurisdictions a real estate broker, under the ordinary contract of employment giving him authority merely to produce a purchaser willing to contract with a seller upon the terms prescribed, or a broker whose authority is specifically limited to finding a purchaser for the property, has no implied authority in the absence of additional circumstances to receive from the purchaser the purchase price in the form of a check made payable solely to the broker. Stewart v. Wood, 63 Mo. 252; Compton v. Vaughan, 222 S.W.2d 81, Mo.Sup.; 12 Am.Jur.2d, 832, sect. 80.

Appellant does not contend that there was anything in the contract from which it might be implied that the agent had authority to receive payment for the warranty deed. It cannot imply such authority from the fact that the plaintiffs signed a written authorization for appellant to withhold a three per cent loan discount in the amount of $450, because such authorization was never seen by appellant. It could not have been implied by appellant from the fact that Conway may have ordered a title report from a title company, because there is nothing in the stipulation of facts to indicate that appellant had any knowledge one way or the other of that fact. Appellant cannot contend that the agent had such implied authority from anything that was stated to or shown to them by plaintiffs, because appellant had no instructions, directions or information, either written or oral, from plaintiffs other than the contract and the deed.

■ It is common knowledge that it is not the usual and customary practice in the lending or real estate trades for a lender to pay for a warranty deed by a check made payable to whoever delivers the deed. Neither is it the usual practice or custom to pay the proceeds of a loan in cash or by check made payable to whoever delivers to the lender a note and deed of trust. Under nor-

mal business practices the lender would have made its check out, not to the messenger or agent bearing the document, but, rather, to the principal to whom the amount was due.

■ Appellant made it possible for Conway to perpetrate the fraud which resulted in the loss. The well settled rule is that when one of two innocent persons must suffer for the wrongful act of another, he must suffer who placed the party doing the wrong in a position to do it. Baade v. Cramer, 278 Mo. 516, 213 S.W. 121; Pashalian v. Big-4 Chevrolet Co., 348 S.W.2d 628, Mo.App.

The judgment should be affirmed. Your Special Commissioner so recommends.

PER CURIAM:

The foregoing opinion by BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court and the judgment is affirmed.

All concur.