THE STATE EX INF. NORTH TODD GENTRY, Attorney-General, v. E. G. CURTIS, GEORGE BARNETT and JOSEPH B. ACKFELD, as Supervisors of WEBSTER GROVES GENERAL SEWER DISTRICT NUMBER ONE OF ST. LOUIS COUNTY.—4 S. W. (24) 467.

Court en Banc, March 17, 1928.

318

*North T. Gentry* Attorney-General, and *L. Cunningham*, Assistant Attorney-General, for informant.

*Brackman, Hausner & Versen, amici curiae; Goodbar, Tittmann & Gilster, Thomas P. Moore* and *Montague Lyon* of counsel.

324

*Carter, Jones & Turney, Nagel & Kirby* and *Roessel & Minton* for respondents.

*Fred A. Boxley* and *James D. Reeves, amici curiae.*

ATWOOD, J.—This is a proceeding in *quo warranto* upon informa-
tion of the Attorney-General to oust respondents as Supervisors of
Webster Groves General Sewer District Number One of St. Louis
County, Missouri, on the ground that the act under which respondents
hold office is unconstitutional. Respondents waived the issuance and
service of the order to show cause herein, entered their appearance
and filed return. Relator demurred to this return on the ground that
it did not "state facts sufficient to constitute any defense to relator's
cause of action," and the cause was submitted on briefs without oral
argument.

The information states that on May 16, 1927, the sewer district
in question was incorporated and organized by order of the Circuit
Court of the County of St. Louis, Missouri, under the assumed au-
thority of an act of the Fifty-fourth General Assembly, approved by
the Governor March 25, 1927, relating to the formation of sewer
districts in counties having a population of seventy-five thousand
inhabitants or more; that on said 16th day of May, 1927, said circuit
court appointed respondents supervisors of said district for definite
terms of office; that on the 19th day of May, 1927, respondents quali-
fied as such supervisors; that on the 20th day of May, 1927, said
respondents proceeded in accordance with said act to organize them-

selves as a board of supervisors for said sewer district, and thereupon commenced the exercise of their official functions as such. The information in fourteen numbered paragraphs alleges that the act is unconstitutional. Paragraph numbered one of relator's attack places the alleged unconstitutionality on two grounds, first, that the provisions of the act which authorize the inclusion of territory within the corporate limits of a city of any of the four constitutional classes create cities of more than the four constitutional classes to the extent that they diminish the power of cities within a district organized under the act, in violation of Section 7, Article IX, of the Constitution of Missouri; and second, that such provisions are not germane to the title of the act, and hence are in violation of Section 28, Article IV, of the Missouri Constitution. Respondent's return specifically denied each of these allegations.

The act in question consists of 41 sections and is found on pages 439 to 465, both inclusive, of the Laws of Missouri of 1927. The title is as follows:

"AN ACT to provide for the incorporation and organization of sewer districts in any county now having or which may hereafter have a population of seventy-five thousand inhabitants or more, defining the powers of such corporations, providing for the ascertainment of benefits and damages to the lands and other property in such districts, the designing and adoption of sewer plans in such districts, the condemnation of lands, and for the issuance of bonds and the levying of assessments and taxes by such districts, 'with an emergency clause.'"

Authority to include territory within the corporate limits of municipalities thus appears in Section 1 of the act (italics ours):

"That whenever any area of contiguous territory within the limits of any county now having or which may hereafter have a population of seventy-five thousand inhabitants or more is or shall be in need of a system of sewers or drains for sanitary purposes or for the protection of the public health or welfare, a sewer district may be created and organized as herein provided, and *such district may be located wholly or partly within the corporate limits of any city, town or village in such county,* or wholly outside of such city, town or village."

Proper disposition of sewage is essential to public health, and the passage of laws making such possible is obviously a proper exercise of the police power. [Morrison v. Morey, 146 Mo. l. c. 562; Dillon on Mun. Corp., pars. 93-96; Cooley on Taxation (4 Ed.) 202.] This power resides in the people of the State. [Sec. 2, Art. II, Constitution of Missouri; State v. Layton, 160 Mo. l. c. 489.] It may be exercised through municipalities and other agencies (28 Cyc. 693), but can never be surrendered or bargained

away. [Sec. 5, Art. XII, Constitution of Missouri; State v. Cantwell, 179 Mo. l. c. 262; State ex rel. v. Murphy, 130 Mo. l. c. 23; Union Cemetery Assn. v. Kansas City, 252 Mo. l. c. 504; 12 C. J. 912.]

It is alleged in respondents' return and admitted by relator's demurrer thereto that the proposed sewer district here under consideration includes parts of three separate incorporated municipalities, to-wit: Webster Groves, Glendale and Shrewsbury. We will take judicial notice of the fact that all of these municipalities are organized under general laws, and not under constitutional delegation of power to frame their own charters. These general laws do not purport and cannot be deemed to give such municipalities the *exclusive* right to construct or own sewers within their territorial limits. Either on the theory of concurrent state and municipal jurisdiction (Spring Valley v. Spring Valley Coal Co., 71 Ill. App. 432, l. c. 440; State v. People's Slaughter House Co., 46 La. Ann. 1031, l. c. 1035), or the State's right to withdraw the police power or any part thereof from local authorities (Ex parte Cencinino, 31 Cal. App. 238, l. c. 243), the State may delegate the exercise of the police power to other existing agencies or create new agencies therefor. [Land & Stock Co. v. Miller, 170 Mo. l. c. 253; Harris v. Bond Co., 244 Mo. l. c. 690.] This is exactly what the General Assembly has sought to do by the law here in question, which relator says is violative of Section 7, Article IX, of the Missouri Constitution. We copy this constitutional provision, indicating by use of italics the part more pertinent, as follows:

*"The General Assembly shall provide, by general laws, for the organization and classification of cities and towns. The number of such classes shall not exceed four; and the power of each class shall be defined by general laws, so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions.* The General Assembly shall also make provisions, by general law, whereby any city, town or village, existing by virtue of any special or local law, may elect to become subject to, and be governed by, the general laws relating to such corporations."

In our judgment the law in question does not so offend. It neither attempts nor effects any classification of cities and towns. It does not purport to define the power of any class of cities and towns nor does it in fact do so. It does not even appear to fall within the class of laws above condemned. The power that might be affected when a sewer district such as this law contemplates is either wholly or partly located within a city would be the police power previously delegated to the city as a governmental agency of the State, as distinguished from the city's proprietary corporate power, and the effect of the formation of a sewer district upon the city's exercise of such power would only be incidental to the exercise of the police

power which constitutionally resides in the people of the State, and which, if deemed necessary for the preservation of the public health, they are not only privileged but bound to exercise if need be through the agency of another corporate entity, and the question of necessity is one for legislative determination. In legislation providing for the exercise of such governmental functions an overlapping of territorial jurisdiction frequently appears. The operation 'of another agency in any part of municipal territory where the city is to exercise like functions may in a measure limit the exercise of such functions by the city, but the circumstances that make an exercise of the police power imperative, as in the matter of providing drains and sewers in a natural drainage area partly within and partly without the corporate limits of a city or town, may rest upon facts in no way connected with the classification of cities, towns and villages and which do not constitute any proper basis of classification. The power so affected is not one possessed by the city and contemplated in this constitutional provision. To hold this law unconstitutional on the ground here urged would be to distort its entire meaning and purpose, and rule contrary to the plain language of the Constitution touching the source, exercise and control of the police power. Drainage laws are closely akin to sewer laws (Land and Stock Co. v. Miller, 170 Mo. l. c. 252), and in drainage cases we have held that the governmental agencies employed in this exercise of the police power are to be classed with counties, road districts and school districts. [State ex rel. Hausgen v. Allen, 298 Mo. l. c. 457; State ex rel. v. Little River Drainage District, 236 S. W. l. c. 16; Anderson v. Inter-River Drainage District, 274 S. W. l. c. 453; Sigler v. Inter-River Drainage District, 279 S. W. l. c. 56.] Although a drainage or sewer district be formed by an agency designated by the General Assembly, and it functions as such, yet the General Assembly in the exercise of the police power may authorize the inclusion of the same territory in another district for the purpose of further like improvement through the same or a different agency. [South Highland Land & Imp. Co. v. Kansas City, 172 Mo. l. c. 530; State ex rel. Marshall v. Bugg, 224 Mo. l. c. 557; Little River Drainage Dist. Co. v. Railroad, 236 Mo. l. c. 112; Sibbett v. Steele, 240 Mo. l. c. 93.]

Numerous decisions may be found in other jurisdictions sustaining similar laws against like attacks. A similar provision appears in the Constitution of Illinois, but in the case of Wilson v. Chicago Sanitary District, 133 Ill. 443, when such an attack was made upon the Chicago Sanitary District, created by a special act of the Legislature and including within its limits parts of several cities, including the city of Chicago, the Supreme Court of Illinois in overruling the contention said:

"If the General Assembly may vest the power in cities, towns and villages, and may also create a corporation in the county and invest it with the power, it would seem to inevitably follow that it may create a corporation including both city and county, and invest it with the power."

The Supreme Court of Indiana overruled a similar contention in Sauntman v. Maxwell, 154 Ind. 114, in which connection the court said:

"Appellees also contend that it was beyond the power of the Legislature to give circuit courts jurisdiction over the drains that would extend through cities. The previous exclusive jurisdiction of the common council over drainage within the corporate limits was granted by the Legislature. That grant was subject to withdrawal or modification. Moreover, the matter of drainage in country and city conjointly never was within the jurisdiction of common councils. It was a new subject-matter, an exceptional situation that the Legislature of 1889 discovered was not provided for by then existing statutes. It was within the Legislature's discretion to lodge jurisdiction of this new matter where it saw fit."

The following cases also hold that an existing municipality may be included within the boundaries of a drainage district: Aldrick v. Paine, 106 Iowa, 461, 76 N. W. 812; Butler v. Fourche, 99 Ark. 100; Pixly v. Saunders, 168 Cal. 152, 141 Pac. 815; Roby v. Drainage Dist., 77 Kan. 754, 95 Pac. 399. See also Cooley on Taxation (4 Ed.) 210.

The four principal cases cited by relator and *amici curiae* as ruled contrary to the above view are distinguishable from the case in hand. In Owen v. Baer, 154 Mo. 434, 1. c. 440, an act was held invalid which granted certain powers to all cities of the fourth class where the voters therein adopted the same for their respective cities at an election held for such purpose. In State ex inf. v. Borden, 164 Mo. 221, 1. c. 235, an act attempting to give special powers to certain cities of the second class was held unconstitutional. The law in this case is not directed to and has no effect upon any particular class or certain cities of any particular class of cities, towns or villages. The other two cases cited, Kansas City ex rel. v. Scarritt, 127 Mo. 1. c. 652, and In re East Bottoms Drainage & Levee District v. Kansas City, 305 Mo. 577, 1. c. 590, arose by reason of Section 16, Article IX, of the State Constitution, which provides for special charters for certain large cities, and under which Kansas City has framed and adopted its own charter. The present case, as above indicated, involves no such constitutional provision. The decisions cited do not militate against our views hereinabove expressed, and this point is ruled against relator.

Nor is the provision permitting the location of such districts "wholly or partly within the corporate limits of any city, town or village" violative of Section 28, Article IV, of the State Constitution, as having no reasonable or natural connection with the subject named in the title. The title states that the act provides "for the incorporation and organization of sewer districts . . . defining the powers of such corporations, providing for the ascertainment of benefits and damages to the lands and other property in such districts, the designing and adoption of sewer plans in such districts, the condemnation of lands and for the issuance of bonds and the levying of assessments and taxes by such districts." It is only natural to assume that cities, towns and villages would be located in such counties, and a provision indicating where such districts may be located with reference to the corporate limits of such cities, towns and villages is reasonably and naturally connected with the subject named in the title.

In paragraph number two of relator's attack it is contended that the emergency clause contained in this law cannot be sustained because the law was in fact not necessary for the immediate preservation of the public peace, health or safety, and, therefore, it was not in force on May 16, 1927, when the sewer district in question was organized, citing Sections 36 and 57, Article IV, of the State Constitution; State ex rel. Westhues v. Sullivan, 283 Mo. 546, l. c. 576; and Fahey v. Hackmann, 291 Mo. 351, l. c. 380. However, relator subsequently in his statement filed in this cause says: "The urgent need of sanitation in the territory affected may be conceded." This point is, therefore, treated as waived and passed without further consideration.

In the third and fourth paragraphs relator insists that the act contains more than one subject, that the subject thereof is not clearly expressed in the title, and that in these respects it is violative of Section 28, Article IV of the State Constitution. An examination of the title of the act discloses that it provides for (1) incorporation and organization of sewer districts; (2) powers of such districts; (3) ascertainment of benefits and damages; (4) designing and adoption of sewer plans; (5) condemnation of land; (6) issuance of bonds; and (7) levy of assessments and taxes. These seven general provisions plainly relate to but one subject, namely, the construction of sewers by a public corporation. Each provision is general in its terms and does not descend into particulars. Of such a general title we thus spoke in Witzmann v. Railroad, 131 Mo. l. c. 618:

"If the title fairly gives notice of the subject of the act, so as reasonably to lead to an inquiry into the body of the bill, it is all that

is necessary. It need not be an index to the contents, as has often been said.''

Also, in State ex rel. v. Revelle, 257 Mo. 1. c. 538, we said:

''This is a mandatory provision though liberally construed. It will not annul an act where all its provisions radiate from the 'single subject' of the bill and are within its just scope and reasonable application, and where *that subject* is pointed out by a title which is not designed to mislead either the members of the Legislature or the people, but which contains a fair forecast of the contents of the bill.''

Relator asserts that the title fails to forecast the provisions of the body of the bill in twenty-two particulars. No question of construction is involved in any except the first and last of these particulars. Items 1 and 22, however, in effect assert that this law affects the classification of cities and their powers and repeals general laws relating to the construction of sewers in cities, towns and villages within which such districts may be wholly or partly located. These contentions must be ruled against relator in view of what we have already said in answer to paragraph one of relator's attack on this law. We have carefully examined the other 19 provisions which relator claims are not included or clearly expressed in the title and are satisfied that this objection is not well taken. In paragraphs 5 and 6 relator contends that the act denies to citizens and owners of property within and adjoining the district the equal protection of the law in violation of Section 1, Article XIV, of the Constitution of the United States, and also denies them due process of law in violation of Section 30, Article II, of the Constitution of Missouri, and the Fifth Amendment to the Constitution of the United States.

The first objection urged under this head is that while Section 2 of the act provides what the petition for the organization of the district shall contain, Section 3 provides for notice by publication, and Section 4 provides that owners of property may file objections, yet it also provides that ''such objection or objections shall be limited to a denial of the necessity or desirability for sewage disposal in the district.'' In other words, it is said that the objections of property owners are limited to a denial of matters not required to be alleged in the petition, and the owner of property is denied a hearing except on that question. This contention overlooks the provisions of Section 1 of the act which must be construed with Section 2 in determining the contents of the petition. Under that section a ''contiguous area in need of a system of sewers'' is a jurisdictional prerequisite to the organization of the district, and hence must be pleaded and proved even in the absence of any objections. In this respect the act goes farther than is required by the Constitution. A hearing upon the preliminary organization is not

a constitutional prerequisite, and where the General Assembly sees fit to grant a hearing upon this question it may lay such restrictions it sees fit. [Little River Drainage Dist. v. Railroad, 236 Mo. 1. c. 109; Houck v. Drainage Dist., 239 U. S. 254.] The legislative body properly made the question of preliminary organization turn upon the single issue of whether or not the territory sought to be incorporated did in fact need sewers. Any other question would have been collateral to the main issue, but upon this question the objector was given full latitude to contest.

The provision for notice and hearing upon condemnation of lands after instead of before assessment is made by the commissioners is next challenged. There is no constitutional requirement that the owner of property be given a hearing, either upon the question of the taking or of the damages, in advance of the appointment, appraisal or report of the commissioners. The act provides that plans showing the improvements and the property to be taken be prepared and filed with the circuit court, which thereafter appoints commissioners who view and appraise the land taken or damaged upon the assumption that the plan will be carried out. Their report is then filed and notice of publication is given that a hearing is to be had upon the commissioners' report. At this hearing the parties are permitted to introduce evidence with respect to the cost of the proposed improvement, the amount of benefits, the value of property proposed to be taken, and the propriety or necessity of the taking as well as the amount of damages to property not taken. After the evidence is considered the circuit court, if it so finds, enters an order of condemnation and at the same time fixes and adjudges the amount of compensation and damages. Possession cannot be taken by the district until after compensation has been paid. These provisions are almost identical with those of the Drainage Act held constitutional in the case of Little River Drainage District v. Railroad, 236 Mo. 94. It seems clear upon the face of these provisions that the landowner is given an adequate hearing, both upon the taking as well as on the amount of compensation, before the property is taken. The cases cited by relator sustain the proposition that the hearing must be given before the taking, but they do not sustain his contention that the hearing must be given before the appraisal by the commissioners. [Barnes v. Missouri Valley Construction Co., 257 Mo. 175; State ex rel. v. Blair, 245 Mo. 680.]

Relator's final objection under this head is against the provision that the owner of the freehold shall represent all other estates. Section 33 of the act, providing that remaindermen, reversioners, trustees and mortgagees shall be represented by the owner of the freehold estate in all proceedings is an exact copy of a similar provision of the Circuit Court

Drainage Act appearing in Section 4415, Revised Statutes 1919. It was construed and sustained by this court in State ex rel. Scott v. Trimble, 308 Mo. 123, and this point must also be ruled against relator.

In paragraphs seven and eight relator contends that the provisions of the act for a re-ascertainment of benefits from time to time and a re-assessment of sewer taxes based thereon violate Section 15, Article II, of the State Constitution, and Section 10, Article I, of the Constitution of the United States, because a re-ascertainment of benefits and re-assessment of taxes based thereon may reduce the respective amounts thereof to a sum insufficient to pay the interest on bonds of the district and create a sinking fund to retire the principal thereof at maturity, thereby impairing the obligation of contracts entered into between such sewer district and the holder or holders of its obligations; also, that the said act denies to the citizens and property holders whose benefits and property are so re-ascertained and re-assessed due process of law and equal protection of the law as guaranteed by Section 1, Article XIV, of the Constitution of the United States. These objections are aimed at Section 37 of the act which provides that upon petition of the district the circuit court shall appoint a new board of commissioners to reappraise the benefits and damages to certain of the property within the district which has undergone a change of benefits since the original assessment, and "that thereafter such proceedings shall be had, including notice, as is in this act prescribed in the first instance for the assessment of benefits and damages." Relator insists that it is possible for such a re-assessment to reduce the benefits below the cost and thereby disable the district from meeting its obligations, from which it is argued that the act authorizes the impairment of a contract. However, the point is not well made in this case because even if such construction be possible the act would not unconstitutionally impair the contract, since the creditors of the district would have become such with full knowledge that a re-assessment might be made. [Daggs v. Insurance Company, 136 Mo. 382, l. c. 390.] In his further contention that under the re-assessment provisions of Section 37 the property owners are deprived of notice and of the right to a hearing upon such re-assessment, relator evidently overlooks the above provision of the section which expressly states that the proceedings must follow those of the original assessment, in which both notice and hearing are required.

In paragraphs nine, ten and eleven, relator asserts that Section 35 of the act offends Section 12, Article X, of the State Constitution in the following particulars: (1) It authorizes the issuance of bonds of the district without the assent of two-thirds of the voters thereof voting at an election held for that purpose; (2) it authorizes the issuance of bonds of the

district in excess of five per cent of the value of the taxable property in the district; and (3) it authorizes the district to become indebted in a year to an amount in excess of the income and revenue provided for such year without the assent of two-thirds of the voters of the district voting at an election held for that purpose. The provisions of the act in this respect are identical with those of the Drainage Act, and we have several times held that bonds issued in benefit districts against special assessments are not indebtedness within the meaning of Section 12, Article X, of the State Constitution. [In re Birmingham Drainage District, 266 Mo. 1. c. 68; Embree v. Road District, 257 Mo. 593, 1. c. 610; Houck v. Drainage District, 248 Mo. 373, 1. c. 383; Meier v. St. Louis, 180 Mo. 391, 1. c. 408.]

Paragraph twelve asserts that Sections 7 and 31 of the act authorize the levy of a general tax on real estate situated in the district, and thus indirectly exempt other property from taxes in violation of Sections 4, 6 and 7, Article X, of the State Constitution. The tax here authorized is a special tax and does not come within the provisions of Article X of the State Constitution. [Houck v. Drainage District, 248 Mo. 1. c. 383; Meier v. City of St. Louis, 180 Mo. 391, 1. c. 408.]

In paragraph thirteen relator insists that this act is a local or special law in violation of Section 53, Article 4, of the State Constitution, in the following particulars: That it regulates the affairs of counties, cities, etc., in violation of paragraph 2 of said section; that it regulates the practice or jurisdiction of, or changes the rules of evidence in, judicial proceedings before the courts, commissioners, arbitrators or other tribunals, in violation of paragraph 17 of said section; that it governs subjects where a general law could be made applicable, in violation of paragraph 22 of said section; and that it partially repeals by implication the general statutes relating to sewers and sewer districts in cities of the four constitutional classes, prohibited in paragraph 33 of said section.

We think this objection is without merit in the particulars urged. The act applies to all counties which may or which may hereafter have a population of 75,000 or more inhabitants. If germane to the general purpose to which the act is directed, and we have held that it is, then population is a proper basis of classification. Every county in the State which at the present time comes within the class created by the act either contains or adjoins one of the larger cities of the State, i. e., St. Louis, St. Joseph, Kansas City, Joplin and Springfield. Congested population in a natural drainage area might well require the organization of sewer districts which should not follow municipal boundaries. There would probably be little or no need of such districts in strictly rural counties of less population. The General Assembly classified the counties of the State upon the basis

of the one element which would determine whether or not the act was needed. As to the propriety of such a basis of classification, in the case of State v. Armstrong, 286 S. W. 705, we said:

"We have ruled, however, that population may be made the basis of classification. . . . There are no doubt many congested centers in rural counties adjacent to our larger cities just as much in need of sewer systems as those rural centers in and near St. Louis, . . . near St. Joseph, Kansas City, Joplin, Springfield, . . . a general law could well be passed to either apply to all rural counties, or to some reasonable classification of such counties."

As to relator's contention that the act is special in that it regulates judicial practice and procedure, it is apparent that no such attempt is made. Like the Drainage Act it is a code unto itself in so far as the procedure authorized by it is concerned. It is a general law relating to all proceedings under it, limited only by a germane, natural and reasonable classification. [In re Drainage District v. Ackley, 270 Mo. 1. c. 173; State ex inf. v. Southern, 265 Mo. 1. c. 284.]

Finally, in paragraph fourteen relator says that the act "is contrary to and in violation of Article III of the Constitution of Missouri in that it is an encroachment of the legislative power on the judicial power, and is an attempt of the legislative to exercise the power properly belonging to the judicial." The act substantially follows the provisions of the Drainage Act. It is not always an easy matter in practical operation to distinguish the functions of the three departments of government, and the delegation of some duties apparently legislative to judicial authorities has not always been frowned upon. [In re Birmingham Drainage District, 274 Mo. 1. c. 154; Cornet v. St. Louis Co., 240 S. W. (Mo. Sup.) 1. c. 111.] Relator does not elaborate or indicate wherein the objection applies, but one of the amici curiae definitely attacks Section 17-a as unconstitutional on the ground that it imposes non-judicial duties upon a judicial officer when it requires the circuit judge of the county in which any such sewer district shall have been incorporated, upon the failure, neglect or refusal of the board of supervisors of such sewer district to determine, order and levy the amount of annual installment of the total sewer taxes levied under the authority of this act, to "determine, order and levy the amount of the annual installment of the total sewer tax which should have been levied under the authority of this act" and "cause such order to be entered upon the records of such circuit court" and "direct and order the clerk of said court to certify to the collector of revenue of such county the amount of the annual installment or installments of the taxes levied under the authority of this act." The validity of this particular section is not vitally essential to the scheme of police regulation expressed in the act, nor is a determina-

tion of this question necessary under the facts and issues presented in this case. The question may well await consideration and determination by the courts when it arises in the course of the administration of this particular section of the act. [Arnold v. Hanna, 290 S. W. (Mo.) 416, 1. c. 424.]

One of the points made in briefs filed by *amici curiae* is that the act is violative of Section 1 of the Fourteenth Amendment to the Constitution of the United States, and Section 30, Article II, of the State Constitution, because "it provides for a tax on the property owners within the proposed district without any representation or voice in the assessment of the kind, character or amount of the tax." It is suggested that the drainage acts in this State give the property owners in the district some voice in its formation and management. In 1 Cooley on Taxation (4 Ed.) sec. 81, p. 204, it is said: "As to the power to delegate authority to tax to officers or a body not elected by the people of the locality, there is some conflict of opinion. In many cases, a delegation to such officers or body is held to be in effect taxation without representation, especially where the officers or body are appointed by the Legislature. But there is authority to the contrary." In Iowa it has expressly been held that the power to tax cannot be conferred upon a board or officer not elected by and immediately responsible to the people of the locality. [State ex rel. Howe v. City of Des Moines, 103 Iowa, 76.] In North Dakota it has been held that the power to tax cannot be delegated to boards or commissions whose appointment has not been in some way assented to by the people. [Vallelly v. Board of Park Commrs., 16 N. D. 25.] Also in Illinois and a few other states where the power to delegate authority to levy municipal taxes is limited to "the corporate authorities" of the municipality, the phrase is construed to mean "those municipal officers who are either directly elected by such population or appointed in some mode to which they have given their assent." [Harward v. St. Clair Levee & Drainage Co., 51 Ill. 130.] A similar phrase appears in Section 10, Article X, of the Missouri Constitution, but we have held in Houck v. Drainage Dist., 248 Mo. 1. c. 383, that special taxes, such as are proposed to be levied under this law, do not come within the provision of Article X of the Constitution, and in this we are sustained by the weight of authority. [19 C. J. 714.] In some jurisdictions there are cases holding that statutes granting to *private corporations* the power to levy assessments against landowners who have not consented thereto are void as to such landowners (19 C. J. 714), but we find no application of this doctrine to *public corporations*. The law in question (Sec. 2) provides that the initial step in the organization of a district shall be by petition of "any one hundred or more adult owners of real estate resident

within the limits of such proposed sewer district" filed "in the office of the clerk of the circuit court of such county." To this petition (Sec. 4) objections may be filed, and if upon a hearing thereon as to the "necessity or desirability for sewage disposal in the said district" said court overrules all such objections, it shall declare and decree said sewer district a *public corporation* of this State. We do not think the law is open to the objections here raised.

It is also urged that the law not only "makes the circuit court the final arbiter of all judicial questions involved," but gives it power to appoint the supervisors in the first instance and their successors thereafter, thus placing "patronage and control over the expenditure of large sums of money" in the court so as to disqualify it as an interested party. The opinion of the Supreme Court of the United States in the case of Tumey v. State of Ohio, 71 L. Ed. 740, decided March 7, 1927, is cited as supporting this view. In the case cited the salary of the convicting tribunal was directly affected by the fine imposed and the decision reversing the case is based upon the fact that the court had a direct pecuniary interest in the result which disqualified. No such situation is presented in this case, and the decision is not in point.

Other questions are raised in briefs of *amici curiae,* but they are either covered in what has already been said or relate to a state of facts not presented in this record.

For the reasons above stated the writ is denied. All concur.