THE STATE EX REL. DRAINAGE DISTRICT No. 28 OF NEW MADRID COUNTY ET AL. v. L. D. THOMPSON, State Auditor.—14 S. W. (2d) 941.

Court en Banc, September 3, 1931.

*R. F. Spitzer, Carl Trauernicht* and *B. H. Charles* for relator.

*Stratton Shartel,* Attorney-General, and *Don Purteet,* Assistant Attorney-General, for respondent.

732

FRANK, J.—Mandamus to compel respondent, the State Auditor, to register bond No. 1 of a series of refunding bonds issued by Drainage District No. 28 of New Madrid County, Missouri. Respondent waived issue and service of the alternative writ, accepted relators' petition as and for the writ, and made return thereto in which he admitted the facts stated in the petition for the writ, then alleged why he declined to register the bond. Respondent moved for judgment on the pleadings.

Drainage District No. 28 was duly incorporated as a drainage district by the County Court of New Madrid County on August 9, 1912, under and pursuant to the provisions of Article IV, Chapter 41, Revised Statutes 1909, as amended. Thereafter in 1915, pursuant to orders of the county court duly made, bonds of the drainage

district were issued in the sum of $340,000, payable in nineteen annual installments, beginning in the year 1916 and ending in 1934. After the issuance of these bonds more than $100,000 in amount thereof was paid off and discharged. There now remains outstanding and unpaid the sum of $217,000. Of this amount the bonds due and payable in 1927, 1928, 1929 and 1930 are in default. In 1929, the Legislature passed an act for the purpose of aiding drainage and levee districts in this State and to relieve the distressed financial condition of such districts by authorizing, among other things, the refunding and extension of the bonds of such districts. Pursuant to this legislative enactment the County Court of New Madrid County took the necessary steps to refund and did refund the outstanding and unpaid bonds in the sum of $217,000, by issuing refunding bonds to that amount in denominations of $1,000 each, payable in twenty annual installments, beginning in the year 1936 and ending in the year 1955.

Respondent's first contention is that the county court had no jurisdiction or authority to refund the bonds, for the reason that after the county court established the district in 1912, and after it issued the bonds in 1915, the district was reorganized by the circuit court under the provisions of Article I of Chapter 28, Revised Statutes 1919, the effect of which was to vest the authority to govern the affairs of the district in the board of supervisors of the reorganized district.

The statute which provides for the refunding of the bonds is a sufficient answer to this contention. This statute, Section 11022, Revised Statutes 1929 (Laws 1929, p. 178), provides that the county court of any drainage district heretofore organized in any county court of this State, may refund the bonded indebtedness of the district, although the original district may have been reorganized in whole or in part. The pertinent part of this statute reads:

"that . . . the county court of any drainage . . . district heretofore organized . . . in any county court of this state, whether said original district has been reorganized in whole or in part, or whether said district in whole or in part has elected to be reorganized under article I, chapter 64, Revised Statutes 1929, . . . whenever in the judgment of such . . . court, . . . it is advisable and for the best interest of the landowners of any such district, may . . . refund all or any part of its bonded indebtedness . . . and issue in lieu thereof new bonds . . . ."

The condition we find in this case illustrates the purpose the Legislature had in mind in giving the governing body of the original district authority to refund such district's bonded indebtedness, although such district may have been reorganized in whole or in

part under some statute other than the one under which it was originally organized. The pleadings in this case show that after the district in question was organized in the County Court of New Madrid County in 1912, and after it issued bonds in the amount of $340,000 in 1915, it was reorganized in part by the circuit court pursuant to the provisions of Article I, Chapter 28, Revised Statutes 1919. In the reorganization of the district a strip of land one mile wide and ten miles long which was a part of the district as originally organized by the county court, was not included in the reorganized district. The reorganized district included all the land contained in the original district except this ten-mile strip. There is no question but what this strip of land is liable for its proportionate part of the tax levied and to be levied to pay the bonds issued by the district as originally organized, of which it was a part, and it cannot escape the payment of this tax by being excluded from the district in the reorganization proceedings. Conceding, without deciding, that the reorganization of the district was valid, the board of supervisors of such reorganized district would have no jurisdiction over the ten-mile strip of land which was a part of the original district, because it was not made a part of the reorganized district. The statute does not give a board of supervisors jurisdiction over land beyond the confines of its district. It necessarily follows that the board of supervisors of the reorganized district would have no authority to refund bonds issued by the original district, a part of which was not included in the reorganized district, and over which such board had no jurisdiction or control. On the contrary the Refunding Statute, Section 11022, Revised Statutes 1929, vests the county court with jurisdiction and authority to refund bonds issued by a district originally organized by such court although such district has been reorganized in whole or in part since the bonds were issued.

The next contention is that if the county court had jurisdiction to refund the bonds, it was without jurisdiction to levy additional taxes, without first exhausting all legal remedies to collect delinquent and uncollected taxes theretofore levied.

Respondent cites in support of this contention: First National Bank v. Drainage Commissioners (Ky.), 17 S. W. (2d) 431; Huey v. Jackson Parish, 33 La. Ann. 1091; Trust Company v. Irrigation District, 66 Colo. 219, 181 Pac. 123; Coleman v. Drainage District, 106 Ark. 22, 152 S. W. 1004; Chicago v. Richardson, 72 N. E. 791.

The last two cases above cited were decided on a demurrer to the petition and neither of them discuss or determine the question at issue in the instant case. The first three cases hold that where a tax has been levied to pay a given obligation, no additional tax

can be levied for the same purpose until all legal remedies have been exhausted to collect the tax first levied. Relators cite the following cases which announce a contrary doctrine: Norris v. Irrigation District, 160 C. C. A. 379, 248 Fed. 369; Arkansas-Louisiana Highway Imp. Dist. v. Pickens, 276 S. W. (Ark.) 355; Cosman v. Irrigation District (Mont.), 238 Pac. 879; In re Dancy Drainage District, 190 Wis. 327, 208 N. W. 479. We think the cases cited by relators announce the better rule. However, none of the cases cited by either party deal with a statute such as we have in the case at bar; therefore, no useful purpose would be served in discussing these cases, because our case is governed by a statute, which, in our judgment, admits of but one construction. The title to the Refunding Act (Laws 1929, p. 178) declares, among other things, that it is an act to aid drainage districts and to relieve distressed financial condition of such districts by authorizing the refunding and extension of its bonds. If all the landowners in the district were able to pay their drainage tax when due, the district would not be in a distressed financial condition and a refunding of its bonds would not be either advisable or necessary. The financial inability of the landowners to pay the tax is the thing that would produce a distressed financial condition of the district within the meaning of the refunding act. Section three of the act authorizes the governing body of the district to refund *all or any part* of the district's outstanding bonds when, in its judgment, it would be advisable and for the best interest of the landowners of the district to do so. If the landowners, or any considerable number of them, were unable to pay their tax, it would not only be for their best interest, but would be in keeping with the spirit and purpose of the act, to extend the time of payment of the bonds by refunding them. Such is the declared purpose of the act. The statute does not provide that all legal remedies for the collection of delinquent taxes shall be exhausted before a refunding of the bonds of the district is authorized. On the contrary, it authorizes the county court to refund all or any part of the district's bonded indebtedness, when, in its judgment it would be advisable and for the best interest of the landowners of the district to do so. Pursuant to this statutory mandate the county court found that it would be advisable and for the best interest of the landowners of the district to extend the time of payment of the bonds by refunding them, and accordingly refunded the bonds. That part of the statute which makes the refunding of the bonds contingent upon a finding that it would be for the best interest of the landowners of the district to do so, shows that the purpose of the Legislature in enacting the statute was to protect the interest of landowners. That purpose would be thwarted if the district were compelled to sell, under legal process, all

lands upon which the tax was delinquent, before the bonds could be refunded. Speaking to a kindred question in State ex rel. v. Holt, 135 Mo. 533, 37 S. W..521, this court said:

"All the lands benefited can be. retaxed whenever it appears that previous assessments are insufficient. Even if the assessment in the first instance was sufficient, if collected, to pay the cash in full, for said improvements, yet if after the allowance of a reasonable time for the collection from delinquents, a deficiency exists, and the legal remedies have been exhausted for the collection of taxes, or if the assessments made have been abandoned *or remain uncollected, by the authorities having the matter of the collection in charge,* the writ should be granted ordering an additional assessment." (Italics ours.)

It is next contended that the court had no authority to provide for the refunding of any bonds other than those voluntarily surrendered by the holders thereof, and was not authorized to levy additional taxes for the payment of refunding bonds without knowing whether or not the holders of outstanding bonds would surrender them to be refunded.

The contention is that outstanding bonds cannot be refunded until they are first surrendered for that purpose. The statute makes no such provision. The statute provides that the district may refund all or any part of its bond indebtedness by taking up and exchanging such of its outstanding bonds as the holders thereof may be willing to surrender, and issue in lieu thereof new bonds of such district payable at such longer time, not exceeding forty years from their date, as such district may determine and the holders of the outstanding bonds may be willing to accept, or said refunding bonds may be sold and the proceeds of such sale used in the payment of the outstanding bonds. It is clear from these statutory provisions that the surrender of the outstanding bonds is not a pre-requisite to an order providing for a refunding of the bonds. If the bond holders are willing to surrender the outstanding bonds and accept in lieu thereof refunding bonds, well and good. But they cannot prevent the district from making provision for the refunding of the bonds, by refusing to surrender them. The statute authorizes the district to sell the refunding bonds and use the proceeds of such sale to pay off and discharge the outstanding bonds. The refunding process would, however, necessarily be incomplete until the holders of the outstanding bonds would surrender them and receive therefor either cash or an equivalent amount of refunding bonds so provided for.

It is next contended that the levy made to pay the refunding bonds as they matured and the interest as it accrued, is void because not made in accordance with the provisions of the Refunding Act.

The levy was made as provided by Article IV, Chapter 28, Revised Statutes 1919, being the present act by which county courts are authorized to incorporate drainage districts. Respondent contends that the levy should have been made as provided by Article IV, Chapter 41, Revised Statutes 1909, which was the law authorizing county courts to incorporate drainage districts as it stood at the time the district in question was incorporated. This contention is based on the following provision of the Refunding Act:

"It shall be the duty of the district issuing such refunding bonds to make proper provisions for their payment in like manner *as is required* in the case of the issue of original bonds by the act under which such district *is* or *shall be* incorporated . . ." (Italics ours.)

We have what may be called the County Court Act under which a county court may incorporate drainage districts. We also have what may be called the Circuit Court Act by which a circuit court is authorized to incorporate drainage districts. The Refunding Act does not say that provision for the payment of refunding bonds shall be made in the manner as *was* provided by the act under which such district *was* organized. If that had been the intention of the Legislature it would not have used the language it did use. The statute uses the word "is," the present tense of the verb, which means "now." The statute says that the district shall make proper provision for the payment of the bonds in like manner *as is required* by the act under which such district *is incorporated*. The district in question is incorporated under the County Court Act. The Refunding Act when properly construed and applied to the facts in this case made it the duty of the county court, at the time it issued the refunding bonds, to make proper provision for their payment in like manner as *is now provided* by the County Court Act under which the district is incorporated. The county court did that and we approve its action in so doing.

Respondents next contend that the 1929 act under which the bonds were refunded is violative of Section 12 of Article X of the Constitution of Missouri in that it authorizes the issuance of refunding bonds to mature at any time within forty years from their date, and to levy taxes to pay same.

We have repeatedly held that bonds issued in benefit districts against special assessments are not indebtedness within the meaning of Section 12 of Article X of the Constitution of Missouri. [State ex inf. v. Curtis, 319 Mo. 333, 334, 4 S. W. (2d) 467, 473; In re

738

Birmingham Drainage District, 266 Mo. 60, 68, 178 S. W. 893; Embree v. Road District, 257 Mo. 593, 610, 166 S. W. 282; Houck v. Drainage District, 248 Mo. 373, 383, 154 S. W. 739.] The bonds in question not being an *indebtedness* within the meaning of the Constitution, it necessarily follows that the constitutional provision fixing the maximum period of time in which *indebtedness* must be paid at twenty years, has no application. Absent a constitutional limitation, it was within the province of the Legislature to fix the maximum period of -time in which refunding bonds of a drainage district must be paid.

The final contention is that the 1929 refunding act is violative of the equal-protection clause of the 14th Amendment to the Constitution of the United States and of Section 3 of Article 10 of the Constitution of Missouri in that it provides for a new and additional assessment upon all the lands within a district without regard to the fact that landowners who may have paid all taxes assessed against them will be required to pay additional amounts to the extent of the deficiency created by the failure of other landowners to pay the taxes originally assessed against them.

The record shows that the additional tax was levied ratably upon all the lands in the district regardless of whether prior taxes on such lands, or any part of it, were paid or remained delinquent. Such a levy creates no inequality. Of course the additional assessment should not exceed the benefits assessed against the land, but no such contention is or could be successfully made in this case. The question presented by this contention has been settled contrary to respondent's view by the Supreme Court of the United States in Kadow v. Paul, 274 U. S. 175, 71 L. Ed. 982, where the court said:

"When the operation of the law works uniformly as against all parts of the assessment district, and results in a higher cost of the improvement, and an increased assessment on all the owners of land who have paid, it violates no constitutional right of theirs as long as their benefits continue respectively to exceed their· individual assessments."

Neither does the 1929 refunding act violate Section 3 of Article X, the uniform-tax clause of the Constitution of Missouri.

The uniform-tax clause of our Constitution invoked by respondent has no application to this case for the reason that special assessments levied in a drainage district to pay for local improvements made in the district are not taxes within the meaning of this clause of the Constitution. [Egyptian Levee Company v. Hardin, 27 Mo. 495, 496; Adams v. Lindell, 72 Mo. 198; St. Joseph v. Owen, 110 Mo.

445, 19 S. W. 713; Morrison v. Morey, 146 Mo. 543, 48 S. W. 629; State ex rel. v. Oliver, 273 Mo. 537, 201 S. W. 868.

For the reasons stated the Auditor was not justified in refusing to register the bond. The alternative writ of mandamus should be made peremptory. It is so ordered. All concur.