STATE OF MISSOURI at the Relation of the CITY OF HANNIBAL, Relator, v. FORREST SMITH, State Auditor.—74 S. W. (2d) 367.

Court en Banc, August 3, 1934.

*Fred B. Hulse, J. A. Collet, Benjamin H. Charles* and *Carl Trauernicht* for relator.

828

*Roy McKittrick*, Attorney-General, and *Covell R. Hewitt*, Assistant Attorney-General, for respondent.

*R. B. Elster, Homer Hall* and *N. S. Brown* for Wabash Railway Company and its Receivers.

TIPTON, J.—Mandamus to compel respondent, the State Auditor, to register bond No. 1 of a series of bonds issued by the relator for the purpose of financing the building of a toll bridge across the Mississippi River. Respondent waived issue and service of the alternative writ; accepted relator's petition as and for the writ; and made return thereto in which he admitted the facts stated in the petition for the writ, then alleged why he declined to register the bond. Relator moved for judgment on the pleadings.

The respondent in his brief admits that "the relator has made a complete statement of facts as set forth in the pleadings;" we will therefore adopt the relator's statement of facts.

"The facts set out in the pleadings show that, pursuant to an act passed by the Fifty-Seventh General Assembly of Missouri, at its Extraordinary Session, said act being entitled: 'AN ACT to repeal an act of the 57th General Assembly, regular session, relating to Roads and Bridges, approved May 12, 1933, and appearing in the Laws of Missouri, 1933, pages 363 and 364, and enact in lieu thereof an act relating to the acquisition, construction, ownership, operation and maintenance, improvement and extensions of toll bridges by counties, municipalities, road districts and political or civil subdivisions of counties or of the state; to authorize the issuance and sale of toll bridge revenue bonds for such purposes; to provide for

their payment; to authorize the execution of liens to secure the payment of such bonds; to provide that the State Highway Commission may contribute to the cost of construction of such bridges and may incorporate and maintain same as a part of the State Highway System, and to declare an emergency,' approved by the Governor on the 22nd day of December, 1933, the city of Hannibal has adopted an ordinance which is set out at length in the petition for the alternative writ, by which ordinance bonds of the city are to be issued to the amount of Three Hundred and Eighty-six Thousand Dollars ($386,-000) for the purpose of meeting part of the cost of a municipal bridge to be constructed across the Mississippi River; the remainder of such cost to be derived from other sources, including a grant of One Hundred and Forty Thousand Dollars ($140,000) to be furnished by the Federal Emergency Administration of Public Works of the United States, and Two Hundred Thousand Dollars ($200,000) to be furnished by the State Highway Commission of Missouri.

"The ordinance provides, among other things, that the city's bonds so authorized are not to be a general liability of the city payable from revenues derivable from the levy of taxes on property in the city; but that they are to be payable solely from tolls to be collected from traffic using the bridge. Section 5 of the ordinance creates a fund to be known as the 'Bridge Toll Revenue Bond and Interest Sinking Fund Account,' into which there is to be set aside from the gross income and revenues from the bridge such portion thereof as will be sufficient to pay the interest on and the principal of the bonds thereby authorized.

"The ordinance recites the Missouri Bridge Act above referred to and the authority thereby conferred upon the city. It also recites the fact that the Mississippi River is a navigable stream, and sets out in full the Act of Congress (Public—No. 105—73d Congress—H. R. 7291), approved February 24, 1934, authorizing the city of Hannibal, Missouri, its successors and assigns, to construct, maintain, and operate a bridge across the Mississippi River at or near the city of Hannibal, Marion County, Missouri.

"The ordinance directs the issuance of the bonds, and, in the conventional way, determines their date, denomination, place of payment, maturities and other incidents; and provides among other things, that,

" 'All of the said bonds, together with the interest thereon, shall be payable only out of the Bond Fund, herein called "Bridge Toll Revenue Bond and Interest Sinking Fund Account," hereinafter created, and shall be a valid claim of the holder thereof only against said account, and the fixed amount of the revenues or tolls derivable from the said bridge of the said city of Hannibal, pledged to said account.' [Section 1 of ordinance.]".

The ordinance sets out the form of the bonds so to be issued, and said form contains, among other things, the following provisions:

" 'This bond is payable only from a fixed amount of the gross income and revenues to be derived from the collection of tolls collectible from traffic passing over and along the said bridge, which income and revenue shall be set aside as a special fund for that purpose and identified as the "Bridge Toll Revenue Bond and Interest Sinking Fund Account," and this bond does not constitute an indebtedness of the city of Hannibal within the meaning of any constitutional provisions or limits. The said city of Hannibal covenants and agrees with each and every holder of any of the said bonds that it will continuously operate and maintain such rates of toll and collect and account for the income and revenues derivable from such tolls, sufficient to create and maintain the said Sinking Fund, so as promptly to pay the principal of and interest on this bond and the issue of which it is a part as the same will become due.'

"The ordinance (in Section 9) sets out a schedule of tolls to be charged traffic using the bridge, and covenants with the prospective bondholders that, subject to changes by the Secretary of War of the United States, and subject to future changes to be made by the city council, these tolls will be charged for vehicular and other traffic on the bridge, and, among other things, that the rates of toll will be such that the income and revenues will be sufficient in each fiscal year, first, to set aside and pay into the 'Bridge Toll Revenue Bond and Interest Sinking Fund Account' the respective amounts as provided in Section 5 of the ordinance (being the annual requirements necessary to service the bonds both as to principal and interest) and, secondly, to pay all operation and maintenance costs of the bridge and its approaches. The ordinance contains other and similar provisions amplifying these covenants, as, for example, in Section 10.

"In Section 4 of the ordinance there is the customary direction that when the bonds shall have been executed they shall be presented to the State Auditor for registration, and the section sets out the form of the auditor's registration certificate. The application for the writ alleges that the mayor and the city clerk did execute bond No. 1 of the said issue and have presented said bond to the respondent for registration by him, 'as required in said ordinance and as required by the statutes in such cases made and provided,' and did tender the fee and compensation allowed said auditor by law; but that the respondent, in disregard of his official duty, did refuse and still refuses to register said bond No. 1. The application for the writ then avers that relator is without remedy in the premises, save and except by writ requiring and commanding the respondent to register the said bond or to show good and sufficient cause why he should not do so."

The respondent alleges the following reason why the peremptory writ should not issue.

"1. The City Council of the City of Hannibal was without authority of law to adopt the said ordinance, because the ordinance is void in that it attempts to authorize the city to incur an indebtedness to an amount exceeding the income and revenue provided for the year in which the ordinance was adopted, without a two-thirds vote of the voters of the city voting on a proposition to incur such indebtedness, at an election to be held for that purpose, as required by Section 12 of Article X of the Constitution; and because the ordinance makes no provision for the submission of such proposition to the voters of the city.

"2. That the ordinance is void because although it purports to make provision that the bonds of the city authorized by the ordinance to be sold to the Federal Emergency Administration of Public Works, pursuant to and in accordance with the terms and conditions of a Loan Agreement dated May 16, 1934, executed by Harold L. Ickes as Federal Emergency Administrator of Public Works (said Loan Agreement being set out at large in the return) are to be paid solely out of a certain Bond Fund derivable from the collection of tolls laid upon traffic using said bridge; and although it was also provided in the said ordinance that the expense of maintaining, operating and repairing the said bridge should also be paid out of the said tolls collectible from traffic using the said bridge, the said ordinance, in Section 7 thereof, further provides as follows:

" 'The City of Hannibal further covenants with each of the purchasers and owners of any of the said bonds that if the revenue of the project should at any time prove insufficient to pay the cost of operating, maintaining and repairing the project, in addition to maintaining the said "Bridge Toll Revenue Bond and Interest Sinking Fund Account," then the city will pay such operation, maintenance and repairing costs with monies received from sources other than the operation of the project.'

"The respondent then alleges that by said covenant the relator city undertakes to obligate itself unconditionally to pay for operation, maintenance and repairs, throughout the period covered by the maturity of the bonds, to-wit, the period of fifteen (15) years from their date, from monies received from sources other than the operation of the said bridge, including revenues arising from taxation of property in said city, contrary to the provisions of Section 12 of Article X of the Constitution, and contrary to Section 3 of the said act passed by the Extraordinary Session of the Fifty-Seventh General Assembly.

"3. That the ordinance is void because the cost of constructing the bridge and approaches is to be paid from the proceeds of (a)

the bonds, (b) a grant of $140,000 by the United States through the Federal Emergency Administration of Public Works, (c) Two Hundred Thousand Dollars ($200,000) to be furnished by the State Highway Commission of Missouri, and (d) Twenty Thousand Dollars ($20,000) to be furnished by the city from city funds; and that the ordinance attempts to pledge to the payment of the bonds the revenues derived from bridge tolls and, therefore, the city is attempting to pledge to the payment of the proposed bonds revenues derived from tolls collected on a bridge not constructed entirely with the proceeds of said bonds.

"4. That the ordinance is void because the State Highway Commission of Missouri is without authority of law to make such advance of the funds of the State to a project to be owned solely and exclusively by the relator city."

I. In substance, Section 12, Article X of the Missouri Constitution provides specifically against the incurring of an indebtedness in an amount exceeding the income and revenue provided for the year in which said indebtedness was incurred without the consent of two-thirds of the voters voting on the proposition.

The bonds in question are to be paid for wholly out of tolls laid on the traffic using the bridge. The lien to secure the payment of the bonds is only on the income from the toll charged for the use of the bridge. There is no lien on the bridge itself.

"A municipality does not create an indebtedness by obtaining property to be paid wholly out of income of the property. Thus, bonds issued to pay for waterworks or a light plant which provide that they shall be paid solely from income of such works or plant do not constitute an indebtedness." [6 McQuillin, p. 48, sec. 2389.]

In the case of State ex rel. Smith v. The City of Neosho, 101 S. W. 99, 203 Mo. 40, we held that the obligation of the city to pay for a waterworks system solely out of the revenue of water was not a debt within the constitutional inhibition.

In the case of Bell v. City of Fayette, 28 S. W. (2d) 356, 325 Mo. 75; the city had contracted to purchase two engines to operate its electric light plant and agreed to pay for them out of the savings that the operation of these engines would make over using the old power plant. "No special or general tax could be levied for the purpose of making payments; they can be paid only from the revenue, the savings derived to the city from the use of these engines purchased." We held that "The constitutional limitation on the debt which a municipality may incur contemplates a debt which must be paid by resort to taxation. Such limitations are intended to prevent an increased tax upon the people." And that the contract was not a violation of our Constitution.

834

In the cases of Birmingham Drainage District v. Chicago, M. & St. P. Railroad Co., 266 Mo. 60, 178 S. W. 839, and State ex rel. Drainage District v. Thompson, 328 Mo. 728, 41 S. W. (2d) 941, we held that bonds payable solely from drainage districts assessments were valid.

In the case of State ex inf. Attorney-General v. Curtis, 319 Mo. 316, 4 S. W. (2d) 467, we held bonds payable from sewer districts assessments did not violate the Constitution.

Obligations payable from road district assessments and obligations payable by local improvement districts are valid. [Embree v. Road District, 257 Mo. 593, 166 S. W. 282; Meier v. St. Louis, 180 Mo. 391, 79 S. W. 955.]

However, in the case of Hight v. City of Harrisonville, 328 Mo. 549, 41 S. W. (2d) 155, we held a contract void where the city had contracted to purchase two engines and other equipment for use in its light plant, where part of the money to make the payments should be paid by the city for the electricity that the city used "at the regular established rates for all product or service of said plant used by the city or any department thereof for any and all public purpose." "In other words, provision is made for the city to purchase from itself, at a profit, power for its water plant, lights for its streets and current for other purposes. The record shows the city has no funds available for such purposes. If it purchases its own current, funds for that purpose must come from funds raised by taxation." The city had already reached its constitutional limit of indebtedness.

In the case of Hagler v. City of Salem, 333 Mo. 330, 62 S. W. (2d) 751, we held a contract similar to the contract in the Hight case void for the same reasons.

In the case at bar, the bonds conform to Section 3 of the act relating to the acquisition of toll bridge wherein it is provided: "That no revenue bonds or any liens securing such bonds shall be repaid in whole or in part from any funds arising from taxation, nor shall any such bonds or liens, given under authority of this act constitute a lien on any other property of any such public agency or a pledge of the credit of such agency. . . ." [Laws 1933-1934, Ex. Sess., p. 116.]

We have consistently ruled that bonds or other forms of obligation issued by cities, counties, political subdivisions, or public agencies by legislative sanction and authority, if such particular bonds or obligations are secured and payable only from the revenues to be realized from a particular utility or property, acquired with the proceeds of the bonds or obligations, do not constitute debts of the particular political subdivision or public agency issuing them within the definition of "debt" as used in the constitutional provisions of this State.

It is, therefore, not necessary to submit the bond issue to a vote of the qualified voters of the city of Hannibal.

II. Nor do we think that the bonds are void merely because the authorizing ordinance provides that if the bridge toll should not be sufficient to meet the principal and interest of the bonds as they fall due, and also pay for the operation, maintenance and repairs of the bridge, the city would, from monies derived from sources other than the bridge tolls, pay for such operation, maintenance and repairs.

It is to be remembered that in no instance are the bonds and interest thereon to be paid from any other source than the revenue derived from the operation of the bridge. All the relator has agreed to do is to charge such toll for the use of the bridge as will pay the bonds and the interest and also the costs of operating the bridge; in the event the revenue is insufficient to pay the bonds and interest and the maintenance of the bridge the relator has agreed to operate the bridge out of some other fund, but does not agree to pay the bonds and interest out of some other fund. If, therefore, there is any liability at all in the maintenance of the bridge, it is purely contingent upon the happening of future events. It may be that there will always be sufficient revenue to maintain the bridge; time can only tell.

The question for us to determine is whether a contingent liability is a debt prohibited by the Article X, Section 12 of our Constitution.

In the case of Saleno v. The City of Neosho, 30 S. W. 190, 127 Mo. 627, 1. c. 639, in an opinion by BURGESS, J., we said:

"A debt is understood to be an unconditional promise to pay a fixed sum at some specified time, and is quite different from a contract to be performed in the future, depending upon a condition precedent, which may never be performed, and which cannot ripen into a debt until performed. Here the hydrant rental depended upon the water supply to be furnished to defendant, and if not furnished no payment could be required of it."

In the case of State ex rel. Smith v. City of Neosho, supra, LAMM, J., speaking for the court quotes with approval Judge BURGESS' definition of the word "debt" as found in the Saleno case.

In 17 Corpus Juris, 1377, the author says:

"Every debt must be either *solvendum in praesenti*, or *solvendum in futuro*—must be certainly, and in all events, payable; whenever it is uncertain whether anything will ever be demandable by virtue of the contract, it cannot be called a 'debt.' While the sum of money may be payable upon a contingency, yet in such case it becomes a debt only when the contingency has happened, the term 'debt' being opposed to 'liability' when used in the sense of an inchoate or contingent debt."

In the case of Bell v. City of Fayette, supra, we held that a contingent liability was not a debt.

We think the case of Hight v. City of Harrisonville, supra, relied upon by the respondent is distinguishable from the case at bar. In that case the city made an unconditional promise to pay a sum that was certain. A part of this sum was to be paid by taxation. The payment did not depend upon a contingency. That case is typical of the other cases relied upon by the respondent.

We hold that these bonds do not violate Section 12, Article X of our Constitution.

■ Nor do we agree with respondent that Section 3 of the Bridge Act found at page 116 of Laws of 1933-1934, special session, requires that operation, maintenance and repairs of the bridge are to be paid first out of revenue derived from the toll charged, and then the balance be used to pay the bonds and interest. The pertinent parts of this section are as follows:

"In the event of the issuance and sale of bonds authorized by this act by a public agency, such agency shall charge a reasonable toll for the use of any such toll bridge, the amount of which toll shall be sufficient to pay the reasonable cost of maintaining, repairing and operating such bridge and to provide a sinking fund sufficient to amortize and repay any such loan, including interest and financing cost, on such dates and within such period of time as may be agreed upon between the borrower and the original purchaser of such revenue bonds."

As we construe this section, it requires that the toll be charged sufficient to pay *both* the bonds and interest, and also the cost of maintaining, repairing and operating the bridge. It does not state whether the bonds and interest be paid first or the cost of operating the bridge be paid before the bonds and interest are paid.

■ III. Respondent next contends that "the ordinance is void because the city of Hannibal has no power to pledge to the payment of the proposed bridge bonds from a bridge not constructed entirely from the proceeds of said bonds." That is, that the relator "has no charter or statutory authority to accept gifts."

This point involves only the question of whether the relator has the authority to permit the Highway Commission and the Federal Government to participate in the building of the bridge. We will later discuss if their participation is a gift.

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes

of the corporation,—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied.'' [Dillon on Municipal Corporations (3 Ed.); sec. 89.]

We have repeatedly approved this quotation, and very recently in the case of State ex rel. Blue Springs v. McWilliams, 335 Mo. 816, 74 S. W. (2d) 363.

Section 4, of this act, expressly gives to the Highway Commission authority to ''contribute not to exceed 30% of the costs of construction of such bridge or bridges when constructed under the provisions of this act and when such bridges form a part of or a continuation of the state highway system, and may incorporate any such toll bridge into the state highway system . . .'' Under the pleadings it is admitted that the Highway Commission will contribute $200,000; that such sum is less than thirty per cent of the cost of construction of this bridge; and that it will form a part of and be a continuation of state highway system.

Section 6 of this act reads as follows:

''The urgent need for bridges over and across the rivers and waters within and bordering this State, the present lack of any appropriate legislation authorizing the construction of toll bridges, the lack of any legislation permitting the use of available federal funds for such purposes, and the need on the part of the inhabitants of the State of Missouri for the expenditure of such federal funds as may be made available by this act, makes the enactment of this act into law necessary for the immediate preservation of the public peace, health and safety of the inhabitants of this State, creates an emergency within the meaning of the Constitution and the imperative necessity that this act shall take effect and be in force from and after its passage and approval.''

It is admitted that the Federal Government will contribute $140,-000 to aid in the construction of this bridge, that under the above-quoted section the relator has the implied powers to accept this aid from the Federal Government.

We believe the Legislature has given the relator the express or implied authority to enact the ordinances authorizing the construction of this bridge.

■ IV. The respondent's last contention is that the ''State Highway Commission has no power and is without authority of law to make such an advance of funds of the State of Missouri to a project which is to be owned solely and exclusively by the relator, The City of Hannibal.''

''(a) The act of the Legislature authorizing the Highway Commis-

sion to contribute state funds to a toll bridge owned by a municipality. is unconstitutional."

Under this point the respondent contends that this act of the Legislature violates Sections 45 and 46 of Article IV of the Constitution of Missouri. Section 45 prohibits the giving or lending of credit to a municipal corporation and Section 46 prohibits the General Assembly from making a grant or authorizing the making of any grant of public money to a municipal corporation.

As we view this act it is not a case of state funds being contributed to a project to be owned exclusively by a municipal corporation. When properly analyzed, this is not a case of a contribution to a local project. It is rather a case where the relator is contributing to the state highway system. The act itself directs the Highway Commission, "when in its opinion the best interest of the State requires," to contribute not to exceed thirty per cent of the cost of construction of such a bridge as when constructed will "form a part of or a continuation of the state highway system," coupled with the further authority granted the Highway Commission "to incorporate any such toll. bridge into the state highway system and maintain such bridge as a part of the state highway system." The act further provided "that at such time when all monies borrowed as aforesaid shall have been repaid, together with interest and charges thereon, no further toll shall be charged for the use of such bridges by the traveling public."

The construction of this bridge is a part of the Recovery Program of the United States, in which the Federal Government, the State Highway Commission and the city of Hannibal, will participate in its building.

We think the act authorizing the building of a bridge is analogous to Section 8133, Revised Statutes 1929, which authorizes the Highway Commission to build streets in municipalities that form a part of the state highway system. In passing on this point in so far as it relates to streets built by the Highway Commission, in the case of State ex rel. Russel v. State Highway Commission, 328 Mo. 942, 42 S. W. (2d) 193, 1. c. 204, we said:

"Respondent raises another point: that the amendment ought not to be construed to authorize road construction in any municipality because this would violate the spirit and intent of Section 46, Article 4, of the Constitution, which forbids the making of any legislative grant of money or other valuable thing to a municipal corporation. On this ground it was held in State ex rel. Town of Kirkwood v. County Court, 142 Mo. 575, 584, 44 S. W. 734, 736, that funds raised by county taxes could not be used for the improvement of streets within a city, town or village.

"If this law is applicable to the state highway system, what becomes

of Section 8133, which has provided ever since its enactment in 1921 that any state highway routed through a municipality of less than 2500 population may be constructed by the commission, and in municipalities of greater population may likewise be built where the abutting houses are not less than 200 feet apart on the average? Paragraph after paragraph of Section 8120 provides that state highways shall go 'through' specified municipalities. All this was a part of the 'existing law' under which the State highway system was 'designated and laid out;' and the amendment provides the system may be completed, widened, or otherwise improved out of the $75,-000,000-bond issue. The fact that a road of the State highway system goes through a municipality does not make it the property of the municipality. *These highways form a state-wide connected system, and their passing through various municipalities is subservient to that purpose. In our opinion their construction or improvement is not a gift or grant to such municipalities.* If this is not true the amendment, Section 44a of Article 4 of the Constitution, must be deemed to have created an exception to Section 46 of the same article. We rule this point against respondent." (Italics ours.)

Either before or after the bridge has become toll free, the State Highway Commission may incorporate the bridge as a part of the highway system. The State Highway Commission by contributing to the cost of construction of this bridge, has incorporated this bridge into the State highway system.

In our opinion the contribution by the Highway Commission to the construction of this bridge is not a gift or grant to the city of Hannibal. The bridge will be a part of our highway system and maintained as such and will eventually be free from toll.

Another reason the respondent contends the Highway Commission has no power to make an advance of funds towards the building the bridge is that "(b) the act of the Legislature authorizing such contribution to a local project is a special and local law and is, therefore, unconstitutional."

The respondent claims this act violates Section 53 of Article IV.

Respondent cites no authority for his proposition. Suffice to say the power granted by the act applies to *"any county, municipality, road district, political or civil subdivision of a county or of the State."* We fail to see how the act can be understood as being a local or special law.

We rule this point against respondent.

From what we have said, it follows that our peremptory writ of mandamus should issue. It is so ordered. *Frank, C. J., Hays* and *Leedy, JJ.,* concur; *Gantt* and *Ellison, JJ.,* concur in result; *Atwood, J.,* dissents.